# SUPREME COURT.

## MELINDA J. McCLURE, respondent agt. THE BOARD OF SUPERVISORS OF NIAGARA COUNTY, appellant.

Where the plaintiff recovers a verdict against the *board of supervisors* of the county, for damages caused by the destruction of his property by a *riot or mob*, he may have his *costs* adjusted on entering judgment, without having presented his claim for payment to the chief fiscal officer of the county before the commencement of the action.

The laws of 1859 provide that "no costs for disbursements, or allowance, shall be recovered or inserted in any judgment against a municipal corporation, unless the claim upon which such judgment is founded, shall have been presented for payment to the chief fiscal officer of such corporation, before the commencement of an action thereon." (*Laws of* 1859, *page* 570, § 2.)

When the statutes providing for the audit and allowance of claims and demands against municipal corporations, are sufficiently comprehensive to include claims arising in *tort*, such claims and demands, after their audit and allowance, will fall within the provision of the law of 1859.

But where the claim or demand is of such a nature as not to be required to be presented for audit and allowance by the public authorities, before an action can be brought upon it, it does not come within the provisions of such act.

The claims and demands which may be presented to the board of supervisors for audit and allowance, and which they are imperatively directed to act upon, are specifically enumerated by the statute. (1 *R. S. 5th ed.* 428, § 2; 902, § 3; 904, § 10.) And they exclude such demands as have their origin in *torts*.

In cases where the board of supervisors are empowered and directed to audit and allow the claim or demand, no suit can be prosecuted against the county for non-payment; either before or after the audit and allowance.

But where property may be destroyed by the act of a riot or mob, the statute provides that the county liable for the damages may be prosecuted by action at once. (3 *R. S. 5th ed.* 874, §§ 1, 2.) And it is not necessary to present the claim to the board of supervisors for allowance, before the action is commenced.

*Erie General Term, May,* 1867.

*Before* MARVIN, DAVIS *and* DANIELS, *Justices.* ·

THE plaintiff in this cause recovered a verdict at the circuit for damages occasioned to her by the destruction of her property by a riot or mob. And on the adjustment of the costs claimed on her behalf, the defendant objected to their allowance, on the ground that the claim on which the verdict was recovered, had not been presented for payment to the chief fiscal officer of the county before the commencement of the action. This objection was overruled by the clerk, who adjusted the costs at the sum of $206.77. The defendant appealed from this decision to the special term, where it was affirmed; and from the order affirming it, the defendant appealed to this court.

G. D. LAMONT, *for appellant.*
P. L. ELY, *for respondent.*

*By the court,* DANIELS, J. The objection made in this case to the allowance of costs to the plaintiff, arises under the second section of chapter 262, of the laws of 1859. That section provides, that "no costs, fees, disbursements or allowance, shall be recovered or inserted in any judgment against municipal corporations, unless the claim upon which such judgment is founded, shall have been presented for payment to the chief fiscal officer of such corporation, before the commencement of an action thereon." (*Laws of* 1859, *p.* 570, § 2.) It is not entirely clear what object the legislature designed to accomplish by the enactment of this section, unless it was to restrain suits against cities and villages upon claims audited and allowed by them, and ordered to be paid by their respective fiscal officers, before the present-ment of the order made to such officer.

Corporations of that description have been liable to suits upon their obligations, whether arising in tort or contract,

substantially the same as individuals are, except where the legislature, by positive provisions, have interfered for their qualification or restraint. (*Angell & Ames on Corporations,* §§ 379, 380, 382, 387.)

This liability to actions has been so far restricted in the cases of villages, as to require all accounts and claims to be first presented to the trustees for audit and allowance, before the persons holding them became entitled to payment. (2 *R. S. 5th ed.* 709, §§ 37, 42.) And when audited and allowed, the treasurer of the village is only authorized to make payment of them, upon the warrant of the trustees, made out and executed as the statute prescribes. (*Id.* 719, § 76.) Enactments of the same general character will be found in many if not all the charters of the cities in this state. Those relating to the city of Buffalo, as now in force, will be found in the laws of 1863, page 445, section 11. And those relating to the city of Lockport, in the laws of 1865, 657, section 7; 685, section 5; 667, section 8.

But after the claims and demands required to be so presented, are audited and allowed, the creditor is not prohibited from then prosecuting and maintaining an action upon them against the corporation liable to make payment.

The statutes provide for a mode of making payment of such claims and demands as are audited and allowed, by warrant drawn upon the city or village treasurer, as the case may be, but they fail to declare that the creditor shall not sue the corporation, without accepting or receiving the warrant on the treasurer. In the enactment of this section concerning costs in suits against municipal corporations, the legislature would seem to have had suits of that description in view. For although the probability of such suits being brought would be exceedingly remote, where the creditor could obtain his money by merely presenting his corporate warrant to the treasurer, it must have been the moving cause inducing the enactment of this law. Cases may occur where it might be just to the creditor, that he should have a judgment upon his claim and demand, after its audit and allowance. As for instance, where the treasurer has no

funds to discharge the obligation. Without, therefore, intending to deny the right of suing the demand altogether, the law intended to impose an important qualification upon it, by securing an ample opportunity for the payment of the demand, before the corporation can be subjected to the expenses of a suit upon it. This secures to the creditor all he is justly entitled to claim, and at the same time it protects the public against needless pecuniary burdens. To this extent, the enactment was highly just and proper. And when the statutes providing for the audit and allowance of claims and demands against municipal corporations, are sufficiently comprehensive to include claims arising in tort, as some of them certainly are, such claims and demands, after their audit and allowance, will fall within this provision of the law of 1859. But where the claim or demand is of such a nature as not to be required to be presented for audit and allowance by the public authorities, before an action can be brought upon it, the case is essentially different. In the former case, it becomes the duty of the treasurer to pay when the warrant for the payment of the debt is presented to him; and for a refusal so to do, with funds in his hands, he would render himself personally liable. While in the latter case, he could not pay if he would, without being guilty of a very plain violation of his public duties.

The claims and demands which may be presented to the board of supervisors for audit and allowance, and which they are imperatively directed to act upon, are specifically enumerated by the statute. (1 *R. S. 5th ed.* 848, § 2; 902, § 3; 904, § 10.) And they very clearly exclude such demands as have their origin in torts. In the cases where the board are empowered and directed to audit and allow the claim or demand, no suit can be prosecuted against the county for non-payment, neither before nor after the audit and allowance. (*Brady* agt. *Supervisors of New York,* 2 *Sandf.* 460; 6 *Seld.* 260.)

But where property may be destroyed by the act of a riot or mob, the statute provides that the county liable for the damages may be prosecuted by action at once. (3 *R. S. 5th*

*ed.* 874, §§ 1, 2.) And it is not necessary to present the claim to the board of supervisors of the county for allowance, before the action is commenced. It may be, perhaps, that the claimant and the board could, by their voluntary action, settle and adjust the demand. But if they could, it would be a matter for negotiation and compromise merely, and entirely optional with both parties whether it should be done or not. If that power exists, it could have no effect upon the consideration of the present question, unless it were so far applied as to secure the actual adjustment of the demand. Then, as it would be in a condition ready for payment, this statute would probably apply to it.

But where, as in this case, no effort for amicable adjustment appears to have ever been proposed, but the claim has been sued and a verdict recovered upon it, as the statute rendering the county liable contemplates that it could be, the case is altogether different from that supposed.

In the case supposed, the demand could be ordered to be paid by the board of supervisors, and it would then become the duty of the treasurer of the county to pay it.

But in the present case, the treasurer, however well disposed he might be to pay it, would have no power to do so. For he can only disburse and pay out the moneys held by him officially, in the manner required by law. And he can only pay such moneys to the creditors of the county as he may be ordered to pay by the direction of the board of supervisors. (1 *R. S.* 5*th ed.* 863, § 86 ; 924, § 37.)

Without the power or ability on the part of the treasurer to pay the claim in suit, its presentment to him would have been not only fruitless, but it would also have been idle and absurd. When the legislature provided for a presentment of claims to the county treasurer for payment, it must have contemplated those only which the law empowered and authorized him to pay when they were so presented. The presentment was required for the attainment of a practical result, and to subserve some useful end, which can only be secured in the cases where the officer is at liberty to pay. It was to provide a reasonable opportunity for payment, and

McClure agt. The Board of Supervisors of Niagara County.

thereby dispense with further needless expense. It could not have been required merely to secure the observance of a useless ceremony, incapable of producing any possible benefit to any person whatever.

It does not follow because the word "claim" is used in this statute, that it must, therefore, be held to apply to whatever that term standing alone might fairly be deemed to include. The extent and meaning of that term must be determined here, as in other cases, by the manner in which the legislature have used it, and the general objects and purposes intended to be accomplished by the use of it.

And to determine that, the other statutes in *pari materia* with the one under consideration, may very properly be examined, as they have been, with it. And by that examination, the evil which was intended to be corrected, is very readily made manifest. Although this term would literally include the demand in suit, it could not have been intended to do so, because no useful end or purpose could be promoted or secured by including it. And in construing statutes, the intention of the legislature, when it can be discovered, is the leading and governing consideration. And that must be followed, even though it may not be in literal harmony with the utmost range of the terms used. (*Howell* agt. *The City of Buffalo*, 15 *N. Y.* 511; *Tonnele* agt. *Hall*, 4 *Comst.* 140; *People* agt. *Utica Ins. Co.* 15 *Johns.* 358, 380.)

The case of *Hart* agt. *The City of Brooklyn* (36 *Barb.* 226), was cited as an authority leading to a differenct conclusion from that already indicated. As far as that case can be regarded as an authority on this point, it appears to support that position. But this question does not seem to have been particularly considered by the court at that time, and it was not necessary that it should be, for it was not essential to the disposition which was then made of that case. The passing observation upon it in the opinion of the court, could hardly be regarded as a decisive disposition of it, when presented in the form in which it has been brought before this court at this time.

On principle, the statute should not be so construed as to

apply to claims and demands of the nature of the one involved in this action, for the reasons already given. If it should, a mere formal presentment of the claim to the treasurer, without any possible expectation of payment by him, would necessarily have to satisfy its requirement. And if that would be a compliance with its terms in cases of this description, they would be as effectually complied with in all others, by presenting the demands to him for payment, before any audit and allowance of them had been made, and where the observance of his duties would in all cases prevent him from making the payment demanded.

If the statute can be made to sanction the practice of presenting an unaudited account for payment in one case, no good reason can be given why it should not in all the others. For it neither makes, nor attempts to make, any distinction between the claims that are to be presented to the treasurer, for the purpose of securing the right to costs, in actions afterwards brought upon them. The effect of a construction which would sanction such a practice, would be to render the statute itself wholly and entirely nugatory. Such a result never could have been within the contemplation of the legislature, and no well considered authority will be found to sustain it.

The order appealed from is correct, and it should be affirmed.

MARVIN and DAVIS, JJ., concur.