SMITH H. NEWMAN, Appellant, *v.* THE BOARD OF SUPERVISORS OF LIVINGSTON COUNTY, Respondent.

Since the act of 1855 (Laws 1855, chap. 427), upon return by the town collector of a tax, laid upon real estate, uncollected for want of goods and chattels of which to make the same, the land is to be classed as non-resident, as to such unpaid tax, and all proceedings for the collection thereof must thereafter be had as if it was the land of a non-resident, pursuant to that act.

Where the board of supervisors assume to add the amount of a tax so returned to the assessment roll of residents, and thus charge it upon one who has succeeded to the occupation of the land assessed, their action is without jurisdiction and void, and the tax thus laid against him is illegal.

If such illegal tax is collected and paid into the treasury of a county, an action as for money had and received will lie against the county for its recovery.

The money having come to the treasury of the county by the wrongful act and with the knowledge of its officers, no demand is necessary before suit, nor is it necessary to present the claim therefor to the board of supervisors for audit and allowance.

The action of a board of supervisors, in issuing a warrant for the collection of taxes, is not the act of the several members, as supervisors of the towns respectively, but the corporate act of the county.

(Argued June 1st; decided June 13th, 1871.)

APPEAL from a judgment in favor of the defendant, entered upon an order of the General Term of the Supreme Court, in the seventh district, on an appeal from an order of the Special Term, striking out an answer and sustaining a demurrer.

This action was brought to recover the amount of a "returned tax" illegally assessed by the board of supervisors of Livingston county, to the plaintiff, in the year 1867.

The complaint alleges, that in the year 1866, one James Forbes was the owner and occupant of the American hotel

premises, in the village of Lima, in the county of Livingston, and was in that year assessed a tax thereon of $141.31.

That before the assessment roll and warrant for that year were delivered to the collector, Forbes had removed to Yates county, and the plaintiff had become the owner and occupant, and was in the actual occupancy of the premises during all the time the assessment roll and warrant were in the collector's hands, and until April, 1867, when the collector returned the tax unpaid, and "that he had not, upon diligent inquiry, been able to discover any goods or chattels belonging to, or in the possession of the person charged with or liable to pay such sum, whereon he could levy the same."

That in 1867, the board of supervisors, at their annual session, assessed to the plaintiff the "returned tax" of 1866, which, with the interest and fees thereon, amounting to $144.84, was carried, with the plaintiff's tax on the same premises for the year 1867, into the fifth or last column of the assessment roll of the town of Lima, for the year 1867, as follows:

| Names of owners or possessors. | Remarks. | Value of real est. | Total real and personal est. | Tax to be p'd thereon. |
|---|---|---|---|---|
| Newman Smith.. | Public House. Ret. tax, $144.84 | $5,000 | $5,000 | $257.67 |

and delivered the same, with their warrant annexed, to the collector.

That the plaintiff paid the tax on said premises for the year 1867, and the collector, by levy and sale of the plaintiff's personal property, made the amount of the "returned tax" and fees of collection, amounting to $151.08, and paid the same, less his fees, to the county treasurer.

The answer sets forth three separate defences, viz.:

1st. That the signing of the warrant was not the corporate act of the county of Livingston, but it was signed by the supervisors of the several towns of said county.

2d. That the defendant had no knowledge or information sufficient to form a belief as to whether the collector made the amount of the said "returned tax," and paid the same to

the treasurer of Livingston county, and denying that the assessment was illegal and void, or the collection of the tax unlawful.

3d. That the claim had not been presented to, or demand made, either of the board of supervisors or of the county treasurer, and that the board of supervisors had never refused to audit said claim, nor had the county ever refused to pay the same.

The plaintiff moved to strike out the first answer as irrelevant or frivolous, the second as sham, and demurred to the third.

The special term granted the motion to strike out the first answer, denied the motion to strike out the second, and sustained the demurrer.

The General Term reversed the order striking out the first answer, affirmed the order refusing to strike out the second, reversed the order sustaining the demurrer, and ordered judgment for the defendant.

The case is reported in 1 Lansing, 476.

*E. A. Nash,* for the appellant, as to the distinction between *illegal* and *erroneous* assessments, cited *Mygatt* v. *Washburn* (15 N. Y., 316); *Barhyte* v. *Shepherd* (35 N. Y., 238). That the action lies, he cited *Chapman* v. *City of Brooklyn* (40 N. Y., 381); *Hill* v. *Supervisors Livingston Co.* (12 id., 52); *People* v. *Suprs. of Chenango Co.* (11 id., 567–569); *Howell* v. *City of Buffalo* (15 id., 512).

*Scott Lord,* for the respondent, as to the latter point, relied upon *Swift* v. *City of Poughkeepsie* (37 N. Y., 511).

FOLGER, J.   The Revised Statutes and subsequent enactments provide ways for assessing, levying and collecting the State and other taxes upon lands.   In doing so, they classify lands into two divisions : One those of residents, and the other those of non-residents. (1 R. S., p. 390, § 9 ;  391, § 11.) The assessment of 1866 of this public house and premises

properly placed it in the first class, for the owner of it at that time was a resident.   All the proceedings to assess and levy that tax seem to have been regular and valid.   The attempt to collect, so far as the town collector was concerned, was regular and valid.  (1 R. S., p. 399, § 10 ; Laws of 1855, 782, § 6.) When he failed to find goods and chattels, of which to make that tax, and made return of that fact to the county treasurer, the lands, so far as the questions in this case are involved, ceased to be liable as those of a resident.   After that, all attempts to collect that tax must have been had against them as those of a non-resident. (Laws of 1855, chap. 427, §§ 4, 5.) For that purpose, the assessors of the town no longer had power or jurisdiction.   The only officer who had power and jurisdiction to initiate new proceedings was the supervisor of the town.   He had jurisdiction of the subject-matter, *i. e.*, the levying of the tax returned unpaid, and of the particular property, the public house and premises.   He had no power or jurisdiction to make an assessment against any person, against the plaintiff, nor to charge or affect immediately the plaintiff or his property, other than this real estate.   He could only proceed in the manner prescribed by the statute.   To proceed in any other manner was illegal.   The object of the statute was not to have the collection of the tax attempted again, as it had been attempted the year before.   By the result of the proceedings of the year before the land, *quoad* this unpaid tax, was taken out of the class of resident lands, and placed in that of non-resident lands, and the only subsequent process of collection of it authorized was to begin with the supervisor, continue through the county treasurer, and become effectual with the comptroller by a sale of the premises as those of a non-resident.   The process which the supervisor in fact adopted would have restored them to the class of resident lands.   It ignored the requirements of law looking to a return of them to the comptroller.   It did not pursue the lands themselves as the thing liable.   It charged the unpaid taxes to a subsequent owner, the plaintiff. It made him as a person answerable, and affixed the lien of the

tax to his goods and chattels. It collected the tax, not from the land, but from personal property, and it did this by inserting in the assessment roll of the following year, on the line with his name, the amount of the unpaid tax, and adding it to the amount of the tax legally assessed; in fact gave a judgment against him for the amount, for which warrant to collect was issued, leviable upon all his goods and chattels, and by other provisions of law collectible from his money and choses in action. (Chap. 318, Laws of 1842.) The supervisor had no power to do this, nor had the board of supervisors. He had not, nor had they jurisdiction to charge the plaintiff with this amount. If the effect of it had been only to charge the land again, there would be some show of propriety in calling it an irregularity merely. But it does in truth relieve the land and does impose a burden upon the person. It is easy to see how this came to be done. The Revised Statutes (vol. 1, p. 403, § 27) did authorize the supervisors, in such a case, to add a description of the land to the roll of the next year and charge the land with the uncollected tax, and directed that the same proceedings should be had in all respects as if such tax *had been laid* in the next year. This mode would charge the person to whom the land should be assessed the next year, because they still continued in the class of resident lands, and the tax upon them would be collected in the first instance by virtue of the warrant to the collector; and the law being so, it would have been right. But the act of 1855 changed this, and by it the supervisors of the town no longer had power to add this description of the land to the assessment roll of resident persons and of lands. All the power he had was to add to the non-resident assessment roll—a power to charge the land. This change in the law seems to have been overlooked. The learned counsel for the respondent contended with much earnestness that the concluding words of section 5, chap. 427, Laws of 1855, viz.: " and the same proceedings shall be had thereon in all respects, as if it was the land of a non-resident, and as if such tax had been laid in the year in which the description is so

added," gave to the supervisor of the town the same power
as the assessor would have had, as to the making up of the
assessment roll and putting thereupon the land; and further
contended that, as the assessors, if they find the land of a non-
resident occupied, shall assess it as they assess other occupied
lands (1 R. S., 392; § 13, sub. 4), the supervisor had
the power to do the same. But the power conferred upon
the supervisor is explicitly defined. All that he may do is to
" add a description thereof to the assessment roll of the next
year *in the part thereof appropriated to taxes on lands of non-
residents,* and shall charge the same with the uncollected tax of
the preceding year." When he has done this his whole power
is exhausted; and he can do nothing else but that, because the
power is not given to him. " And the same proceeding shall
be had *thereon,*" *i. e.,* on or after that act of the supervisor,
" as if it was the land of a non-resident." By the phrase,
" the same proceedings," is meant the same *subsequent* pro-
ceedings, including the action of the county treasurer and of
the comptroller of the State to sell the land for the collection
of the tax. The lands not being those of a non-resident when
assessed, but of one who, after the assessment and before
collection of the tax, has ceased to occupy them; or, of
one who, though still occupying, has no goods and chattels
from which the tax may be made, this provision of law was
added by the act of 1855, amending a section of the Revised
Statutes (1 R. S., 403, § 27), so as to bring them within the
operation of the provision of law in relation to non-resident
lands. This act of the supervisor, the sole act he may do in
relation to them, is the legal machinery by which the lands
are transferred from the class of lands of a resident to that of
a non-resident, and, this effected, " the same proceedings are
had thereon," thereafter, " as if it were the land of a non-
resident," which proceedings are provided for in the act of
1855, above cited.

It would seem, then, that in inserting the amount of this
unpaid, and returned as unpaid, tax of the year 1866, in the
assessment roll of residents and of their lands and personal

property, and thereby charging this tax of 1866 to the plaintiff in 1867, the supervisor of the town of Lima, and the board of supervisors, assumed to do that which he and they had no power to do. He and they assumed a power and jurisdiction of the person of the plaintiff which no law gave to them or him. The act was, therefore, void, and the tax thus assessed against him was illegal. (*Prosser* v. *Secor*, 5 Barb., 607; *People ex rel. Mygatt* v. *Supervisors of Chenango*, 11 N. Y., 563; *Mygatt* v. *Washburn*, 15 N. Y., 316.) But the collector of the town went forward under his warrant, and collecting the tax of the plaintiff by a sale of his chattels, paid it into the treasury of the county. From thence it has been appropriated and expended for the use of the county. We have held in *The Bank of the Commonwealth* v. *The Mayor, etc., of the City of New York*, decided in December, 1870, that when a tax assessed is illegal and the assessment has been set aside, on review thereof, and the amount of the tax has been collected and paid into the treasury of a municipal corporation and used by it for purposes prescribed by law, an action can be maintained against such corporation for its recovery. This decision was not put upon the ground that the defendant, the city of New York, was liable for the act or misfeasance of the assessing, collecting and receiving officers, as those of its agents. That action was not to recover of the defendant damages for such misfeasance. It was to recover money in the possession of the defendant which did not belong to it, but did belong to the plaintiff. That case is analogous to this. There the assessment was erroneous and was reversed, becoming on reversal as if it had never been. Here it is void, and is from the first as if it had never been.

It is suggested, however, that the same rule will not apply to this action against the county of Livingston as does to a city, and that in this State there is no authority for holding that an action will lie against a county for money paid to satisfy an illegal tax, and received and used by the county, while the tendency of the authorities is against it. *Lorillard* v. *The Town of Monroe* (11 N. Y., 392), is cited. That

was an action against a town to recover $485 "alleged to have been erroneously assessed as taxes upon lands" owned by the plaintiff, partly in the town of Monroe and partly in a town adjoining.   The assessors of the town of Monroe had assessed in that town the whole tract, and a tax was therefore imposed and was paid by the plaintiff to the collector.   As to so much of the land as laid without the town of Monroe, the assessors of that town had no jurisdiction, and their assessment was void.   It was held by this court that the action would not lie. But it was looked upon, as appears from the opinion of DENIO, J., as an action to recover damages for the misconduct of the assessors in making the assessment.   It was there shown that they were not the agents or servants of the town, and that it was not liable for their misconduct.   It is expressly noticed in that opinion that it is not alleged in the complaint and was not proven on the trial, that any part of the money which was collected from the plaintiff was paid to the town or into its treasury.   The case of *Preston* v. *The City of Boston* (12 Pick., 7), where an action was sustained, is referred to, and it is remarked that, in that case, the money illegally collected by compulsion was paid by the plaintiff to the treasurer of the defendant, and the action was for money had and received to the plaintiff's use, and that the city corporation, as such, had received the plaintiff's money, " which was *an essential feature*," it is remarked, " wanting in this case."   And that was the case of a city having full corporate powers, the officers concerned in imposing and collecting the tax being corporate officers.   It must not be overlooked either, that the opinion lays much stress upon the restricted corporate capacity of towns, and holds that, for the purpose of the assessment and collection of taxes, they are but political divisions of the State. And in this connection it is to be noticed that the Revised Statutes, in the different chapters conferring corporate capacity upon town and county, use language as near as may be identical.   (1 R. S., p. 337; id., 364.)   So that the reasoning of *Lorrillard* v. *The Town of Monroe* will apply as well to an action of the same kind against a county.   In the *People*

*ex rel. Mygatt* v. *Supervisor of Chenango* (11 N. Y., 563), the opinion goes somewhat further, and lays down the doctrine that a town is not liable to refund money paid for its use, obtained by an illegal tax, the assessment of which was void for want of jurisdiction. But this was not necessary to the · judgment. That case was an application for a mandamus to direct the board of supervisors to levy upon the town the amount of the tax. But it was held that a mandamus is not an appropriate writ where there is a remedy by action; and that there was a remedy by action against the assessors of·the town. It was *obiter*, therefore, to declare that the town was not liable for money paid for its use. Moreover, there is at least one distinction between the case of a town and that of a county. For, though their corporate capacity is declared in the same language, there are some accessories which a county has, but a town has not. A county has a treasury and a treasurer, and money may be paid not only for its use, but may be received directly for it into its treasury, and from thence paid out by it for its own use, as was done in the case in hand. In *Chegaray* v. *The City of New York* (12 N. Y., ·220), some passages in the opinion indicate a doubt whether either trespass or assumpsit will lie against a county for the property taken or the amount of a tax illegally assessed. This doubt seems to rest in part upon the fact that portions of the money had been paid over to the treasury of the State. Such is not the case in the action now in hand. Apart from this, however, the point was not involved in that case, for it was held that the tax was legal. In *Swift* v. *The City of Poughkeepsie* (37 N. Y., 511), it was held that, although the property being exempt from taxation, the tax was erroneous, yet the assessors had jurisdiction, and their act in laying the assessment was valid, and until that action was reversed in some appropriate way, it had the effect of a judgment, and could not be questioned by a collateral action. The opinion goes farther, however, and declares that there is no precedent in this State for a suit to recover taxes " erroneously assessed." The case is sometimes cited to prove that no action will lie

for a tax illegally assessed. It will be seen that, after holding that the act of assessment was a judicial act by officers having jurisdiction, and was valid and had the force of a judgment, it was not needful that the opinion should go farther, if it did so. But as the phrase it uses is "taxes erroneously assessed," it is not an authority to establish that money received for a tax *illegally* assessed without jurisdiction, may not be recovered back in any case. These cases are noticed because they are commonly relied upon to sustain the proposition above stated. However, no case in this State, in the court of last resort, it is thought, has yet held that money collected for a tax illegally assessed, and held and received by a county, can be recovered back by the person injured until after the assessment has been reversed. In *Hill* v. *The Supervisor of Livingston County* (12 N. Y., 52), an action of that kind was entertained. But it was there held, that the tax was legal and valid, and no mention is made in the prevailing opinion, that the county would or would not have been liable had the tax been held illegal. It is to be noticed, however, that DENIO, J., who before, in the same year, had given the opinion in *Lorillard* v. *The Town of Monroe* (*supra*), was in favor of an affirmance of the judgment appealed from, which judgment had upheld the action of assumpsit against the county for money had and received to the plaintiff's use, by means of an illegal tax. He was too careful a judge, not to have considered whether the one position was compatible with the other, and to have reached an affirmative conclusion thereon before determining that such judgment should be affirmed. In *Chapman* v. *The City of Brooklyn* (40 N. Y., 381), it is said, "it has repeatedly been held in other states, that taxes illegally imposed and collected might be recovered back from the municipality into whose treasury they had been paid. * * * No very good reason can be urged against maintaining the rule, so far as it has been extended in other States, since there is no room for doubting that a remedy would be afforded between individuals for the recovery of money in cases where, by color of void judicial pro-

ceedings, it might be forcibly taken from one and delivered to another." See pages 380, 381, and cases there cited from other States. This was an action to recover money paid for land sold on a void assessment, and the action was sustained, and though not an adjudication directly in point, it has close analogy. If it must be conceded that there is no direct authority in this State for holding that an action, as for money had and received to the use of the plaintiffs, will lie against a county, where money has been collected for an illegal tax, and paid into its treasury, and used by it for county purposes, the imposition of the tax not having been set aside, it must also be conceded that there is no direct authority to the reverse of that.

A county has, to some extent, a corporate capacity, the same as has a town. (*Lorillard* v. *Town of Monroe, supra.*) It has a capacity to sue and to be sued in the manner prescribed by law, all acts and proceedings against it to be in the name of its board of supervisors. (1 R. S., p. 364; id., 473, § 95, §§ 1, 3, p. 384, § 2.) It may be seized of lands. (Id., 365, § 5.) It may be possessed of and entitled to money, rights, credits, and other personal property. (§ 6.) It may owe debts. (§ 7.) It has a treasurer whose duty it is to receive all money belonging to the county, and pay out the same (id., p. 364, § 20), keeping books of accounts thereof (§§ 21, 24), which are the books of the county, and all losses by his default, in the discharge of duty, are charged to the county. (Id., 419, § 5.) Whenever any controversy or cause of action shall exist between any county and an individual, such proceedings shall be had, with judgment to the like effect, as in suits between individuals and corporations (id., 384, §§ 1. 6), and judgment against the county or the board of supervisors on account of the liability of the county shall be a county charge, to be levied and collected. (§ 6; 2 R. S., 474, 475, §§ 102, 105.) The process is to be as against other corporations, to be served, not upon the supervisors as individuals, but upon the officers of the board, the chairman or clerk, as such. (Id., 473, § 95; 1 R. S., 384, § 3.) There can be no doubt, then, that the statute law contemplated in a county so

much of corporate entity as could own and hold real and personal property ; could incur debts and liabilities ; could have and receive money into and pay it out from its own treasury, and keep account thereof ; could have controversies with an individual and become liable to action from him, and be cast in judgment therein, under suits and proceedings like those against other corporations. If it may owe debts, it must have power to contract them by a promise to pay ; and if it may make a contract or promise, it may be sued upon it if it neglect to pay according to the terms thereof. If it may make an express promise, what is there in the nature of its existence, in the power it has and the liabilities it may incur, which forbids that it shall come under an implied promise to pay ? And may it come under an implied promise to pay which cannot be enforced against it ? In my judgment, the force of the provisions of the statutes in relation to counties is that it cannot. "No sound reason exists for exempting even municipal corporations from the controlling effects of this wholesome principle, that when the consideration has failed, the contract price should be repaid ;" for it is equally as unjust and inequitable for them to retain money they have acquired without consideration, as it is for a private person to attempt to do so. No principle of morality or law can be invoked against the latter which does not apply with the same force to the case of the former; and this has generally been heretofore regarded as including corporate bodies as well as private persons (Angel & Ames on Corporations, 4th ed., §§ 237, 379, note 4), ·such bodies being held liable upon implied as well as expressed promises." (40 N. Y., 380.)

The facts in this case show that the county of Livingston, through the wrong act of the supervisor of the town of Lima, and of the board of supervisors of the county, has, by its county treasurer, had and received into its treasury, and has paid out therefrom, for its own use, the money of the plaintiff, to which it was not entitled. The receipt of that money by the treasurer was a receipt of it by the county. It has received that money by acts which were void for want of

official power and jurisdiction to do them. The money, *ex æquo et bono,* belonged to the plaintiff; and in such case, whether it is withheld by a natural or artificial person, an action will lie to recover it, where such person is capable of suing and being sued. It is not necessary to assert that an action of tort will lie against a county for the redress of the injury. But an action for the money had and received will lie against the person or corporate body having received and without right withholding money, whether it was or was not obtained by wrongful means. It may be said that the power conferred upon the supervisor of the town of Lima, to determine what land should go upon the assessment roll as liable to a charge for taxes of the year before returned unpaid, being judicial (though that the power given was judicial in its nature is not admitted), and he having acted judicially, no action will lie to recover the money enforced from the plaintiff under his determination, until that determination is properly reversed. But that principle applies only to a judicial determination, which is based upon jurisdiction, and is erroneous or irregular. Where there is no jurisdiction the act is void, and the judgment or determination is a nullity. It stands in the way of no action or proceedings. Money got by it is money got by a wrong, and it cannot be set up to justify or protect the getting. And that it is void and a nullity for want of jurisdiction may appear in a collateral action to recover back what has been seized by it. (*Moses* v. *Macfurlane,* 2 Burrows, 1005; *Lazell* v. *Miller,* 15 Mass., 207; and see *Starr* v. *Trustees, etc.,* 6 Wend., 564–567; and 40 N. Y., 381.) I conclude that this action, being for money had and received, will lie against the county of Livingston. (*Joy* v. *The County of Oxford,* 3 Greenl. [Maine], 131.)

This brings us to the conclusion that the complaint in this action does state facts sufficient to constitute a cause of action. The defendants do not, then, shield their answer from the demurrer by a successful attack, upon their part, upon the complaint. The demurrer of the plaintiff is to the third answer of the defendant. It avers that the claim of the

plaintiff has never been presented to the defendant nor any demand of payment made, nor has there been a refusal to make payment thereof.

The money which the plaintiff seeks to recover came into the treasury of the defendant by a wrongful act. It was the wrongful act of officers acting for the defendant, for it was the act of the board of supervisors, which is the board by which the county acts, and the county is chargeable also with knowledge of it. For property obtained by a wrongful act, wrongful to the knowledge of the party, no demand need be made before bringing action. Neither was the plaintiff affected by the provisions of 1 R. S., 386, § 4, that accounts for county charges of every description shall be presented to the board of supervisors of the county, to be audited by them. (*The People ex rel. Mygatt* v. *Supervisors of Chenango, supra.*) This claim was not a county charge within the purview of that provision, for the claims which fall within the general designation of "county charges," used in section 4, are specifically enumerated in section 3. There is no class there named into which this claim would fall. By 1 R. S., 367, § 4, sub. 2, the board of supervisors has power to examine, settle and allow "all accounts chargeable" against the county. This is but a paraphrase of the term county charges used in section 4, at page 386, above noticed. (*Brady* v. *Supervisors of New York*, 2 Sand., 469–471.) The claim of the plaintiff is not an account chargeable to the county, and although it is not necessary to assert that the board of supervisors has not power to examine, allow and settle it, it is not such an one as must be presented to the board for audit, and a proceeding taken to enforce it in case of refusal other than an action. (*Brady* v. *Supervisors, supra*, 472.) It is held in that case that claims growing out of the malfeasances of county officers, and claims for which the county may be liable arising from torts, are not necessarily to be presented for examination and allowance. (And see *McClure* v. *Supervisors of Niagara*, 50 Barb., 594; *Howell* v. *City of Buffalo*, 15 N. Y., 512.)

No other provision of statute or rule of law is suggested by the learned counsel for the defendants, why a demand before action should have been made. We hold, then, that the demurrer to the third answer was well taken, and that the Special Term was right in ordering judgment thereon.

The first answer averred that the signing of the warrant to the assessment roll was not the corporate act of the county of Livingston, but the act of the several supervisors, as supervisors of the towns respectively.

The Revised Statutes (1 vol., p. 396, § 37) provide that, to each assessment roll delivered to a collector, a warrant, under the hands and seals *of the board of supervisors,* or a majority of them, shall be annexed. This is the act of the board, though to be performed by the members severally. A board of supervisors is a continuous body, though of changing members. (*Supervisors of Chenango* v. *Birdsall,* 4 Wend., 460.) There could be no propriety in having the supervisors of other towns, as individuals or several officers, sign and seal a warrant to the collector of any one town in the county. The authority to sign and to empower collection by levy and sale of goods and chattels if need be, is drawn by the statute naturally from the joint action of the board in the exercise of its power to equalize the valuation of the assessors of the different towns, to correct the different assessment rolls, and to set down in the last column thereof the sums to be paid as tax. The same joint power and joint exercise of it, though expressed by several action, is continued into the signing of the warrant. It is the board which does it, not each as an agent or officer respectively of the several towns, but all or a majority of them as the members of the body, which is a county body. The allegation of the complaint is that the " said defendant duly annexed its warrant thereto in the form prescribed by statute, under the hands and seals of its several members." It is frivolous and irrelevant to answer that it was not the corporate action of the county, but of the supervisors of the several towns, for it raises no issue material in the action. It may not be stricken out as frivolous, for sec-

tion 152 of the Code does not allow that. It may be stricken out as irrelevant, and the section permits that, and the plaintiff asks for that relief in the notice of motion.

The second answer is the denial of certain material allegations of the complaint. It is good in form. It puts in issue allegations which must be proved or admitted before the plaintiff can recover.

It is sufficient to say that it is a general denial, and cannot be stricken out on motion as false or sham. (*Wayland* v. *Tysen* and *Thompson* v. *Erie Railway Co.*, decided by this court and not yet published.)[*]

The judgment of this court should be, that the first answer of the defendant should be stricken out as irrelevant; that the demurrer to the third answer be sustained, and that judgment be ordered thereon; that the motion to strike out the second answer as sham or false be denied. And as neither has succeeded in full on the appeal to this court, without costs of this court to either, as against the other.

All concur, except PECKHAM, J., not voting, and RAPALLO, J., absent.

Judgment accordingly.

---

[*] Reported ante, *Wayland* v. *Tysen*, p. 281; *Thompson* v. *Erie Railroad Company*, p. 468.