JANUARY TERM, 1875. 393

Merchants' National Bank of New York v. Supervisors of New York.

MERCHANTS' NATIONAL BANK OF NEW YORK V. SUPERVISORS OF NEW YORK.

*Taxation — taxes illegally collected — county liable for State tax — county of New York not liable for city tax — board of supervisors of county not agent of State in collection of tax — Statutory construction — Laws 1863, chap. 108.*

In 1862 there was levied and collected from the Merchants' Bank in the city of New York certain illegal taxes, part for the purposes of the city, part for those of the county and part to pay the State tax. By the provisions of the statute, the assessment rolls of the various taxes imposed in New York county and city are sent by the board of supervisors, with warrants attached, to enforce their payment to the receiver of taxes, and the moneys collected by him are paid to the city chamberlain, who is also the county treasurer. By Laws 1863, chap. 108, authority was given to raise in the New York county tax levy such amounts as might be necessary to supply any deficiency in the product of the taxes of 1862, resulting from an assessment of illegal taxes for city and county purposes. *Held*, in an action against the board of supervisors of said county to recover the amount paid by plaintiff for such taxes, that the defendant was liable for the amount of the tax imposed and collected for State and county purposes, but was not liable for the amount of the tax received by the city, and that the act of 1863 mentioned did not render defendant so liable.

The State tax is a contribution made by the county toward the expenses of the State government; a debt due from the county to the State, and the board of supervisors are not, in reference to its imposition and collection, the agents of the State government in any respect.

MOTION for a new trial after a verdict directed by the court subject to exceptions ordered to be heard in the first instance at the general term.

The action was brought by the Merchants' National Bank of the city of New York against the board of supervisors of the county of New York, to recover for taxes illegally assessed and collected. The circumstances were as follows:

In March, 1862, the commissioners of taxes assessed the value of the capital stock of the plaintiff liable to taxation, in the manner provided by law, at the sum of $2,561,500, in which amount was included the sum of $1,701,000 of the capital stock of said bank which was then invested in bonds, stock and obligations of the United States. During the time that the assessment rolls for the year 1862 were open for inspection and review, and before they were delivered to the supervisors of the county of New York, the

plaintiff applied to have the same corrected by striking therefrom the said sum of $1,701,000 which was so invested in bonds of the United States. The commissioners refused such application and duly confirmed the assessment, and afterward the taxes for the year 1862 were imposed by the supervisors of the county of New York, in accordance with said assessment. In June, 1862, the plaintiff sued a writ of certiorari out of this court, directed to the commissioners of taxes and assessments, commanding them to certify their assessment to said court, and thereupon such proceedings were had that afterward the Court of Appeals adjudged that the said assessment against the plaintiff should be corrected by deducting therefrom the amount of the capital of said bank invested in bonds of the United States, and on the 5th day of February, 1864, this court, upon the *remittitur* from the Court of Appeals, adjudged that said assessment should be so corrected. Prior to the last-named date, on the 29th day of November, 1862, while the proceedings on said certiorari were pending, the plaintiff was compelled to and did pay the tax imposed as aforesaid to the receiver of taxes, and the same was afterward paid over by him to the chamberlain of the city of New York, who is by law the treasurer and depositary of the county of New York. The amount of the tax imposed upon the said $1,701,000 so invested in United States bonds and securities was $29,502.14, of which sum the amount levied for city purposes was $15,221.38, for county purposes $7,492.71, of which $5,207.89 were collected for police purposes; and for State purposes $6,788.05. Upon proof of the foregoing facts, the plaintiff asked the court to direct a verdict against the defendants for the entire amount of $29,502.14, with interest from the 29th day of November, 1862, which was refused, and the plaintiff's counsel excepted.

The court instructed the jury that the plaintiff was entitled to recover the sum levied for county purposes to wit, $7,492.71, and the sum levied for State purposes, to wit, $6,788.05, with interest on the aggregate amount of the two last-named sums from the 29th day of November, 1862, amounting to the sum of $25,531.36, to which direction the defendants' counsel excepted.

Defendants' counsel requested the court to instruct the jury that the plaintiff was not entitled to recover any part of the sum levied for State purposes, which the court refused, and to such refusal the defendants' counsel excepted.

JANUARY TERM, 1875. 395

Merchants' National Bank of New York v. Supervisors of New York.

*John E. Burrill,* for plaintiff.

*E. Delafield Smith* and *David J. Dean,* for defendants:

BRADY, J. The predecessor of the plaintiff, the Merchants' Bank of the city of New York, was obliged to pay $29,502.14, that being the amount of the tax imposed for the year 1862 upon $1,701,000 of its capital, which was invested in government securities, and therefore not subject to taxation. The impost was declared to be illegal by the Court of Appeals.

It appears that $15,221.38 was levied and collected for the purposes of the city ; $7,492.71 for the county, and $6,788.05 to pay the tax due to the State.

Upon the trial the court ruled that the plaintiff was entitled to recover against the defendants the portions respectively collected for county and State purposes only, and a verdict was accordingly rendered. It was conceded that the defendants were liable for the amount collected for the purposes of the county, but not otherwise. Exceptions were taken to the rulings, as follows: By the plaintiff, to the exclusion of the portion assigned to the city; and by the defendant, to the allowance of the portion allotted to the State; and all were directed to be heard in the first instance, at the general term. The questions to be considered are presented by these exceptions.

The expenses of the State government are provided for annually by an act of the legislature, which declares the rate of taxation upon all the real and personal property of each county. The mode of ascertaining the amount of such estate taxable, is by State assessors who make the valuations and submit them to the board of equalization, whose duty it is to determine the amount of the assessment of such estate on which the tax shall be levied. The result is communicated to the board of supervisors of the several counties by a circular from the comptroller, which also declares the amount of tax to be levied for the State from each county. Laws of 1859, chap. 312.

The legislature also annually enact a bill authorizing what is called the county tax levy for the county of New York, and another called the city tax levy, and by which the supervisors of this county are authorized and required to raise by tax on property subject to taxation the sums named, in addition to the several sums

required to be levied by special laws, which necessarily includes the sum to be paid to the State.

These enactments generally contain a clause or section (see Laws of 1861, chap. 293, § 6) making it the duty of the board of supervisors of this county to include in the amount to be raised three per cent on the aggregate amount, to provide for deficiencies in the actual product of the tax, but it was omitted in the tax levies of 1862.

The board of supervisors, under and by virtue of these acts, ordain that there shall be imposed upon the estates, real and personal, subject to taxation, an aggregate sum, presenting as well a specification of the items of which it is composed.

The taxable property of this city and county is assessed by deputy tax commissioners, who, under the direction of the commissioners of taxes and assessments, assess the taxable property in the districts assigned them, and the result is set forth in detail in "The annual record of the assessed valuation of real and personal estate." Laws of 1859, chap. 302. The assessment rolls are delivered to the supervisors, and by them, when corrected, are sent to the receiver of taxes with warrants attached to enforce the payment of the sums imposed. Laws of 1843, chap. 230, art. 2, § 1. The moneys collected are paid to the city chamberlain (Laws of 1843, *supra,* art. 1, § 8), who is also the county treasurer. 1 R. S. (4th ed.) 686.

It will thus be perceived that the money paid in discharge of taxes, whether for city, county, or State purposes, passes through the receiver to the chamberlain, who represents the city and county by holding the funds of both.

The amount of the tax due to the State must from the annual returns made to him of the valuations of real and personal estate be charged by the comptroller against each county treasurer who shall be prosecuted by the attorney-general, if he refuse or neglect to pay it. Laws of 1855, chap. 427, §§ 8–12. The object of the proceedings before the board of equalization is to determine fairly, the contribution which each county shall make to, or the quota it shall pay toward the expenses of the government of which it is a part, according to the value of its estates, real and personal, while those in reference to the taxes for the city and county of New York, by the board of supervisors are to settle fairly and equally the amount which individual owners, or the property of persons and corporations subject to taxation, shall pay toward the

expenses of the city government, and of discharging obligations imposed upon the city or county by special laws.

The contribution, if it may be so called, to the expenses of the State government, is in fact the discharge of a debt due from the county, an obligation assumed by its relation to the government for the protection afforded it and the advantages enjoyed. It is charged at once to the county treasurer, and its payment may be enforced by action. The board of supervisors are not, in reference to it, the agents or representatives of the State.

The State declares the sum which must be paid according to the system adopted for ascertaining it, and becomes a creditor, but it furnishes the means to each county for collecting the amount of its indebtedness thus established, out of property within its own boundaries, by acts of the legislature authorizing an impost for that purpose. These acts provide as we have seen for the manner of determining the property taxable, statements of which contained in the assessment rolls are transmitted to the Board of Supervisors, who supervise and correct them. The direct assessment or tax is an act of theirs, and not of the State. The latter creates a debt which must be paid, and the former, by authority duly conferred, proceed to raise the money to pay it.

If error be made by the Board of Supervisors, the consequences, if any, must fall upon it, and not upon the State. The State tax to be paid is not to be levied of any specific property, but of that of the entire county, and if that property be sufficient for the purpose, as it must be, the tax must be paid. It would not be a successful response to say to the State, that by reason of an error of the Board of Supervisors in the estimate of values of real and personal estate, the tax had not been collected.

The duty to pay is imperative. For these reasons it seems to be wholly immaterial upon the question of the defendants' liability to refund a tax illegally levied and collected, whether it was in part a portion of the tax due to the State from the county generally, and particularl' when it appears that all the taxes are amalgamated in the hands of one treasurer, that is all received and held by him, whether of the city, county or State.

It is perhaps inaccurate to say "of the State," otherwise than to designate the sum to be paid to the State. The taxes collected are those of the city and county, with the existing obligation of the latter out of its share to pay to the State the debt due. This view

has been substantially declared by the legislature in reference to the claim herein asserted, for we find in the county tax levy of 1863 (Laws of 1863, chap. 108) authority to raise "such additional amount of money as may be necessary to supply any deficiency in the product of the taxes of, and for the year 1862, which were authorized to be levied for city and county purposes, and which were based on assessments which the Supreme Court of the United States have adjudged and declared to be in part erroneous."

The judgment of the Supreme Court referred to was pronounced at the December term, 1862, in the case of *Bank of Commerce v. N. Y. City*, 2 Black. 620, and it was then decided that the securities of the United States, such as held by the plaintiff, were exempt from taxation.

The supervisors were, it must be further said, by the act of the legislature, just mentioned, made the quasi trustees of the fund to supply the deficiencies, that is, to raise a sum of money equivalent to that paid to the city and county as a substitute therefor, and which would necessarily be required to refund to the persons who had paid the taxes erroneously and illegally imposed.

The provision therefor, it will be perceived, is in the county, and not the city tax levy, and was designed as an appropriation to the county for the exigency to which it related. It was therefore the creation of a fund for the county, and the county treasurer became under that act and the several laws referred to, relating to taxes and their collection and deposit, the custodian of the money on behalf of the county, for those whom it might concern. That this was so, is evident from the fact that the county had already received its quota of the whole tax which was levied and paid, and which included the erroneous tax under consideration.

The tax levied was not therefore deficient in point of fact. It had yielded, so far as we are advised, the sum intended to be raised, but would be so if the city and county were obliged to refund in consequence of the decision of the Supreme Court of the United States hereinbefore mentioned. Hence the act putting the county in a financial position to answer these demands. This seems to be a fair and just interpretation of the act.

It has, however, even a broader signification and effect, than to provide for the obligation of the county, arising upon the facts disclosed. The city, as well as the county, had received its quota of the general tax, and nothing was due to it. There was no

JANUARY TERM, 1875.  399

Merchants' National Bank of New York v. Supervisors of New York.

deficiency as before suggested, and the provisions of the act mentioned rendered it impossible that there should be. The obligation of the city was transferred by it to the supervisors, who were invested with the power of raising the money to meet, and therefore charged with the duty of paying back or refunding the illegal taxes paid.

The necessity of separate actions was thus avoided, and the whole subject placed under their control for adjustment. For these reasons we think the court erred in ruling that the quota paid to the city was not a valid claim against the defendants, but was right in declaring them responsible for the quota paid the county, and out of which it was required to pay the sum due to the State. It is not necessary to discuss the effect of the cases cited by the defendants' counsel. The statute of 1863, *supra*, presents an entirely different question from any of those disposed of in the cases mentioned, because the effect of it as shown is to provide a fund for the payment of the taxes illegally levied and collected.

The court below was doubtless controlled by the case of *Bank of Commonwealth* v. *Mayor of New York*, 43 N. Y. 184, in which it was held, that the tax imposed having been annulled and declared invalid, the city was responsible for the portion received by it, but not for the quota paid to the county. The statute of 1863, *supra*, was not referred to on the argument of this appeal, and it may be that the attention of the presiding justice was not called to it.

Whether the defendants would be responsible for the quota paid the city in the absence of that statute, it is not necessary to declare. If this were an action against the city to recover such sum, this court might sustain it, upon the theory that the city's indemnity was provided for by the act of 1863, and leave the city to secure it. However that may be, it is clear that the object of that act was to provide a fund to be applied to the payment of claims founded upon the illegal levy and collection of the taxes of 1862, a levy acknowledged by the legislature to have been improper. It was money had and received by the county for the benefit of the owners of such demands. Neither the city nor the county had any claim upon it for aught that appears. Neither had refunded any of the tax received, and both had been paid in full. The liability of the defendants in an action like this seems to be settled by the case of *Neuman* v. *Supervisors of Livingston*, 45 N. Y. 676, assuming them to have received the money of the plaintiffs wrongfully. It

is true that they paid out certain portions of it, but they were invested with power, and it became their duty to re-imburse themselves, and in that way to prepare for the demand. This authority is equivalent to a receipt of the money, and the fund should be applied in the first instance to the payment of the claims for which it was intended. In the simple forms of procedure created by our Code, circuity of action should be avoided, and there seems to be good reasons why it should be in this case.

The verdict should be set aside and a new trial ordered.

DANIELS, J. The conclusion maintained by Mr. Justice BRADY, that the plaintiff was lawfully allowed to recover a verdict for the amount of the tax imposed and collected for State and county purposes, is fully sustained by the reasons he has given in support of it, but those given for holding the county liable for the amount of the tax received by the city are not so controlling. It is conceded that no such liability can be maintained unless it has been created by chapter 108 of the Laws of 1863. And that concession was necessarily required in consequence of the decision made in the case of *Bank of Commonwealth* v. *Mayor of New York*, 43 N. Y. 184. Whether the county can properly be rendered liable for the amount of the tax received by the city, must therefore depend entirely upon the provision made by that act.

That does not expressly create the liability. It merely provides that the said supervisors are also hereby authorized and required to order and cause to be raised in the manner aforesaid, such additional amount of money as may be necessary to supply any deficiency in the product of the taxes of and for the year 1862, which were authorized to be levied and raised for city and county purposes, and which were based upon assessments which the Supreme Court of the United States have adjudged and declared to be in part erroneous. Laws of 1863, chap. 108.

The amount authorized to be imposed and raised by this enactment is by its terms expressly limited to any deficiency in the product of the taxes of and for the year 1862, in consequence of the adjudication that the taxes were in part erroneous. The object was to supply the county with the sum, which on that account was made deficient. The law so describes and declares it. It was not provided by this act that the county should impose and collect additional taxes for the purpose of reimbursing what possibly

might afterward be collected from the city on account of the tax being in part erroneous, nor for the purpose of enabling the county to pay claimants what they otherwise might possibly recover from the city.

The theory of the act is that some of the taxes had proved incapable of collection because they had been declared unlawful by the decision which was mentioned. In that way a deficiency in the county funds was created, and that it was the object of the act to provide means for supplying. It was not to create a fund for the payment of demands which might afterward be made because taxes actually received had been improperly imposed, but only to supply any deficiency in the product of the taxes of the year 1862. It did not provide the county authorities with the means of paying subsequent demands for what the city had received in the orderly course of other statutory provisions. And it is not to be supposed, and it certainly was not shown, that any amount was ever levied or collected for that object. For that reason the county has not now, and never has had, in its treasury that part of the tax collected of the plaintiff and paid to the city, nor any sum whatever for its reimbursement. The action, in substance and effect, is to recover money had and received by the defendant belonging to the plaintiff. It never did receive that paid to the city, and never has been authorized to receive any for the purpose of paying that amount to the plaintiff.

The motion for a new trial should be denied and judgment ordered for the plaintiff on the verdict, with costs.

DAVIS, P. J. I concur in the opinion of Mr. Justice DANIELS. It was not shown that the money authorized to be collected under the act of 1863 was raised or came into the hands of the supervisors.

*Judgment for plaintiff.*