## CHARLES N. ROSS, RESPONDENT *v.* THE BOARD OF SUPERVISORS OF THE COUNTY OF CAYUGA, APPELLANT.

*Action to recover a tax illegally collected by a county — when it may be recovered with out first vacating the assessment — what evidence is sufficient to show a receipt of the money by the county — a claim to recover a tax illegally collected need not be first presented for audit.*

In each year from 1875 to and including 1879, the board of supervisors of the county of Cayuga included in the taxes imposed upon the taxable property of the city and town of Auburn, in that county, the whole amount of the fees and charges audited and allowed by the said board of supervisors to the sheriff for receiving, keeping and boarding prisoners committed to jail by the Courts of Special Sessions and police justices in the said city, while the statute required that the said amounts should be assessed upon the taxable property of the county as a county charge. This action was brought by the plaintiff to recover the illegal amounts so added to the taxes imposed upon the property of the plaintiff's assignors, and by them paid to the city treasurer and tax receiver, by whom they were paid to the sheriff upon checks drawn by the supervisors of Auburn.

*Held,* that as the board of supervisors had no statutory authority to impose these taxes upon the city their action was wholly without jurisdiction, and that the plaintiff could maintain this action to recover the amounts so paid without

first procuring the assessment to be vacated in proceedings instituted directly for that purpose.

*Newman* v. *Supervisors of Livingston County* (45 N. Y., 676) followed.

That the case fell within the rule laid down by the Court of Appeals that where there is any essential defect in an assessment which does not require to establish it, proof outside of the proceedings themselves, it is a patent defect which will rob the assessment of all force even when questioned collaterally.

*Horn* v. *Town of New Lots* (83 N. Y., 105).

That evidence, showing that the money obtained from the plaintiff's assignors was received by the city treasurer of Auburn, and was by him paid over directly to the sheriff in payment of his fees due to him from the county on the order of the defendant, sufficiently established the receipt of the money by the county to entitle the plaintiff to maintain this action.

That as the plaintiff's claim was founded upon the illegal and wrongful action of the board of supervisors, it was not necessary for him to present it to that board for audit before bringing this action.

APPEAL from a judgment in favor of the plaintiff, entered on the decision of this case upon a trial by the court at the Cayuga Circuit without a jury.

*Howland & Wheeler*, for the appellant.

*John D. Teller*, for the respondent.

SMITH, P. J.:

This is an action to recover moneys claimed to have been unlawfully collected from plaintiff's assignors by way of taxes, and had and received by the county of Cayuga, to the use of plaintiff's assignors. It appears from the facts found by the trial judge, not excepted to, that in the years 1875, 1876, 1877, 1878 and 1879, the board of supervisors of the said county, in estimating and setting down in the assessment-rolls for said years, respectively, the sums to be paid as taxes upon the valuation of real estate and personal property of the taxpayers of the city and town of Auburn, in said county, included in said taxes the whole amounts of the bills audited and allowed by said board of supervisors to the sheriff of the county of Cayuga in each of said years, for board and key fees, viz. : For receiving, keeping and boarding prisoners convicted before, and committed to the common jail of the county of Cayuga by, the Courts of Special Sessions in and for the city of Auburn, and by the Police Justices' Courts of said city of Auburn, having the powers and performing the duties of a Court of Special Sessions in and for

the city of Auburn, and by the police justices and officers performing the duties of justices of the peace in said city, such convictions being for misdemeanors. It further appeared that by reason of such action of the board of supervisors in assessing the taxes to provide for the payment of such sheriff's fees upon the city and town of Auburn instead of upon the county at large, the plaintiff's assignors, residents of Auburn, were assessed and compelled to pay a larger amount of taxes than they otherwise would have been, and the amount claimed herein is made up of the items of such excess in their taxes for each of said years, with interest. The said taxes for sheriff's fees were all collected by the city treasurer and tax receiver of the city of Auburn, and by him paid over to the respective sheriffs upon the checks of the supervisors of Auburn, drawn by the supervisors upon the treasurer to the order of the sheriff.

The board of supervisors in assessing the said tax against the town instead of against the county, claimed to act under the provisions of section 26 of chapter 180 of Laws of 1845, as amended by chapter 455 of Laws of 1847, which is as follows: "All fees and accounts of magistrates and other officers for criminal proceedings including cases of vagrancy, shall be paid by the several towns or cities wherein the offense shall have been committed, and all accounts rendered for such proceedings shall state where such offense was committed, and the board of supervisors shall assess such fees and accounts upon the several towns or cities designated by such accounts; but when any person shall be bound over to the Oyer and Terminer or Court of Sessions, or committed to jail to await a trial in either of said courts, the costs of the proceedings had before the single magistrate shall be chargeable upon the towns or cities as aforesaid, and the costs of the proceedings had after the person shall have been so bound over or committed shall be chargeable to the county; but nothing herein contained shall apply to cases of felonies, nor where the proceedings or trial for the offense shall be had before any Court of Oyer and Terminer or Court of Sessions of the county, and the fines imposed and collected in any such cases shall be credited to said towns or cities respectively."

It is admitted that the taxes in question here were erroneously and illegally assessed upon the town instead of the county, the point having been expressly passed upon, and the section of the

statute above quoted having been construed by the court of last resort in the case of *The People ex rel. Van Tassel* v. *Board of Supervisors of Columbia County*, in the year 1876 (67 N. Y. 330). That was a proceeding by *mandamus* on the relation of a sheriff to compel the board of supervisors to provide for the payment by the county of his fees for receiving, boarding and discharging prisoners in cases of misdemeanors and of violations of city ordinances, and the Court of Appeals decided that such fees were a county and not a town charge, and must be paid by the county.

It is claimed, however, by the defendant's counsel that the illegality of the tax in question cannot be shown or taken advantage of by the plaintiff in the present action, for the reason that the assessment laid therefor cannot be attacked or questioned in this collateral proceeding, and that the plaintiff and all others are bound and concluded by it, and money paid under it cannot be recovered, until the assessment shall have been vacated in a proceeding instituted directly for that purpose. In support of this position, our attention has been called to the following cases: *Peyser* v. *The Mayor* (70 N. Y., 497); *Matter of Lima* (77 id., 170); *Buffalo and State Line Railroad Company* v. *Supervisors* (48 id., 93); *Wilkes* v. *The Mayor* (79 id., 621); *Bank of the Commonwealth* v. *The Mayor* (43 id., 184); *Swift* v. *City of Poughkeepsie* (37 id., 511); *Sherman* v. *Trustee of Clifton Springs* (27 Hun, 390). While these cases maintain the general doctrine contended for, and place an assessment regular in form upon the same footing as a judgment, in that it cannot be attacked collaterally, it will be observed that in each instance the assessment so held to be conclusive was levied by a body or official having competent jurisdiction to levy the same; and we apprehend that there is no decision holding an assessment even *prima facie* conclusive for any purpose unless jurisdiction is unquestioned or shown. This requirement is in the line of the analogy between tax assessments and judgments, jurisdiction in the court being a prerequisite to render a judgment of any force whenever invoked for any purpose, and being always open to inquiry.

This point was directly passed upon in the case of *Newman* v. *Supervisors of Livingston County* (45 N. Y., 676). That was an action similar in form to the case in hand, and was brought to recover the amount of a "returned tax," alleged to have been ille-

gally assessed upon and paid by the plaintiff. In that case the board of supervisors had added to plaintiff's regular tax for the current year the amount of the tax for the preceeding year, assessed against the then occupant of the land subsequently occupied by the plaintiff, and returned as uncollected for want of goods and chattels, instead of proceeding to collect such unpaid tax as a tax upon "non-resident land," the former occupant having removed from the county. The Court of Appeals held that the action was maintainable, although the assessment had never been directly attacked or vacated, and, referring to certain of the cases relied upon by the defendant herein mentioned above say, " these cases are noticed because they are commonly relied upon to sustain the proposition that no action will lie to recover a tax illegally assessed. * * * If it must be conceded that there is no direct authority in this State for holding that an action, as for money had and received to the use of the plaintiffs, will lie against a county, where money has been collected for an illegal tax, and paid into its treasury, and used by it for county purposes, the imposition of the tax not having been set aside, it must also be conceded that there is no direct authority to the reverse of that. * * * The money *ex æquo et bono* belonged to the plaintiff, and in such case, whether it is withheld by a natural or artificial person, an action will lie to recover it, where such person is capable of suing and being sued. It is not necessary to assert that an action of tort will lie against a county for the redress of the injury. But an action for the money had and received will lie against the person or body corporate having received and without right withholding money, whether it was or was not obtained by wrongful means. It may be said that the power conferred upon the supervisors of the town of Lima, to determine what land should go upon the assessment-roll as liable to a charge for taxes of the year before, returned unpaid, being judicial (though that the power given was judicial in its nature is not admitted), and he having acted judicially, no action will lie to recover the money enforced from the plaintiff under his determination, until that determination is properly reversed. But that principle applies only to a judicial determination, *which is based upon jurisdiction*, and is erroneous or irregular. Where there is no jurisdiction the act is void, and the judgment or determination is ε.

nullity. It stands in the way of no action or proceedings. Money got by it is money got by a wrong, and it cannot be set up to justify or protect the getting. And that it is void and a nullity for want of jurisdiction may appear in a collateral action to recover back what has been seized by it. * * * I conclude that this action, being for money had and received, will lie against the county."

We are of the opinion that the above principle, upon which the court of last resort proceeded in the Newman case, applies to the case now under consideration. The only authority to levy the tax in question, claimed by defendants, is under the section of the act of 1845, above set forth; but that section, as construed by the Court of Appeals in *Van Tassel* v. *Supervisors* (*supra*) gave no such authority, and it follows that the board of supervisors had no jurisdiction over the assessment or levy of such a tax upon the towns in their county. Such jurisdiction could only be conferred by the legislature, and no statute conferring it can be shown. The date of the adjudication upon the statute in question by the court of last resort is immaterial, as it merely declares what was the force and effect of the statute from the beginning, and what every man was bound to know and act upon.

Again, the conclusiveness of an assessment when collaterally attacked, has been further limited by the Court of Appeals to " cases of assessments where the invalidity is, so to speak, latent, and does not appear upon the proof that must be made to sustain proceedings under them." (*Horn* v. *Town of New Lots*, 83 N. Y., 104, 105.) This ruling was in a case brought to recover money paid under an illegal assessment for a public improvement, but we do not understand that there is any distinction between an ordinary tax assessment and an assessment for a public improvement in respect to the point now under consideration. The act under which the assessment in the above case was laid had been theretofore declared unconstitutional and void by the Court of Appeals in *Stuart* v. *Palmer* (74 N. Y., 183), but the assessment had never been vacated. The circumstances of the case were therefore similar to those of the case in hand, so far as the present question is concerned. The Court of Appeals would thus seem to lay down the rule that any essential defect in an assessment which does not require proof outside of the proceedings themselves is not a *latent* defect

but *patent*, and will rob the assessment of all force even when questioned collaterally, and that a material defect in the act upon which the assessment and the proceedings to enforce it are based, and which must necessarily be invoked to sustain such proceedings when questioned, is a *patent* and not a *latent* invalidity. Under that rule the lack of jurisdiction in the present case is patent.

The defendant's counsel further insists that the evidence shows that the money in suit never came into the county treasury or into the possession of the defendant, and that therefore an action for money had and received does not lie against the county. The evidence does show that the money obtained from the plaintiff's assignors was received by the city treasurer of Auburn and by him paid over directly to the sheriff in payment of his fees due him from the county, on the order of the defendants. We are of the opinion that this use of the money for the county's benefit, in payment of its creditor by its direction given through its board of supervisors, was such an exercise of control over the money as amounted in effect to possession, and was sufficient to support this action.

The defendant also contends that plaintiff should not be permitted to recover in this action for the reason that the same was prematurely brought, it being insisted that the claim in suit was not properly presented or submitted to the board of supervisors before commencement of suit. It has been held, however, that demands against a county to recover taxes illegally assessed are not such claims as are required by law to be so presented. As was said by the court in *Newman* v. *Supervisors of Livingston County* (*supra*), "the money which the plaintiff seeks to recover came into the treasury of the defendant by a wrongful act. It was the wrongful act of officers acting for the defendant, for it was the act of the board of supervisors, which is the board by which the county acts, and the county is chargeable also with knowledge of it. For property obtained by a wrongful act, wrongful to the knowledge of the party, no demand need be made before bringing action. * * * The claim of the plaintiff is not an account chargeable to the county, and although it is not necessary to assert that the board of supervisors has not power to examine, allow and settle it, it is not such an one as must

be presented to the board for audit, and a proceeding taken to enforce it in case of refusal other than an action."

It follows from these views that the judgment appealed from should be affirmed.

Barker and Bradley, JJ., concurred.

Judgment affirmed.