[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 514 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 515 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 516 
Title five of the act to revise the charter of the city of Buffalo, passed April 13th, 1853, relates, among other things, to the funds and expenditures of the city. The first section authorizes the common council to audit and allow all accounts chargeable to the city. It also provides that no unliquidated account, or claim, or contract shall be received for audit, unless accompanied with an affidavit of the person rendering such account or claim, to the effect that he verily believes the services, or property therein charged, have been actually performed, or delivered, for the city, and that the sums charged are just, and that there are no payments or offsets, except such as are named. The section then declares "it shall be a sufficient bar and answer to any action, or proceeding in any court, for the collection of any demand or claim that it has not been presented to the common council for audit or allowance; or if on contract, that it was presented without said affidavit, and rejected for that reason," c. The manifest purpose of all this, is to afford the common council an opportunity to examine, adjust and pay for property or services furnished to the city before suit brought. The word claim is used in connection with the word account, and whatever signification might be given to it under other circumstances, it is qualified and limited by the language with which it is connected, and the obvious purpose of the section of which *Page 517 
it forms a part. If the demand is liquidated, and the amount ascertained, no affidavit is needed. But if the services are performed, or the property is furnished under a contract, and the prices or the extent of the services, or the quantity of the property, is uncertain, and open to any question, then an affidavit must be annexed. The expression, "or if on contract," found in the concluding clause of the section, is imperfect, and not the best that could have been selected to effect the purpose designed, yet it does not imply that claims arising ex delicto,
must be submitted for examination and audit to the common council before action brought.
Section eleven, of the act of the 17th of April, 1843, to consolidate and amend the act to incorporate the city of Buffalo, authorizes the common council to cause streets, alleys, c., to be graded, leveled, paved, c., and to determine the amount to be assessed for the improvement, which is to be charged upon the real property benefited. It also provides for the election of five assessors, to make the assessment upon the property, with the right of appeal to parties aggrieved. Section twelve provides for awarding to the owners of lands, which are, in the opinion of the assessors, damaged by such improvement, a reasonable recompense for the injury, which they are to assess upon the real property benefited, and add the same in the assessment roll, which they are required to make, and certify to the common council. This power may be exercised by the assessors upon their own motion, and without the claim of the owners of the lands injured. Section thirteen authorizes the owners to make an affirmative and formal claim for these damages; "and the commissioners, or assessors, as the case may be, shall ascertain all such damages, and assess the same as hereinbefore provided, upon the real estate benefited by such alteration," that, is as provided in section eleven. These three sections are all that are material to the present inquiry. The law nowhere favors the idea of double *Page 518 
assessments by separate boards of assessors, one to ascertain the benefits and distribute the expenses of the improvement, and the other to ascertain the lands injured, assess the damages and distribute the same over the property benefited. There is to be but one board of assessors, and but one assessment of benefits and damages. The common council may, upon appeal, and in pursuance of the provisions of section eleven, vacate the assessment, and direct a new one to be made by the same or by new assessors; but the entire asessment is to be made de novo, both in respect to the expenses of the improvement, and the damages done to property, over and above its benefits. Both estimates, and their distribution upon the lands are inseparable. The damages awarded as a compensation for injury to the damaged lands are in excess of the benefits, which the same lands derive from the improvement, and the sums charged upon the benefited lands are a just proportion of the benefits, as well as of the damages awarded to others. Two separate boards of assessors, one to distribute and assess the expenses upon the lands thought to be benefited, and the other to estimate and award damages to those thought to be injured, and to distribute and assess the same upon the lands thought to be benefited, might differ widely in their estimate of what lands were benefited, and what were injured; and their assessments and awards could result in nothing less than confusion and positive injustice.
The common council of the city, by a resolution adopted on the 1st of June, 1852, ordered Green-street, between Washington and Michigan-streets to be graded and paved. By another resolution of the date of the thirteenth of July of the same year, the expenses of such grading and paving were ascertained and determined to be $4630. Assessors were duly appointed, who proceeded to assess and distribute the expenses upon the property benefited, in conformity with the provisions of the eleventh section of the act. The assessment roll was filed in the proper office, and duly confirmed *Page 519 
by the common council. The assessors saw no occasion for the exercise of the powers conferred upon them by the twelfth section, in respect to lands damaged by the improvement; and no one, as far as appears from the papers, made any claim for damages under the thirteenth section. The common council is the agent and instrument of the landowners, in respect to these improvements. The work is to be conducted and completed under its direction. It is to ascertain how much certain owners are to pay, and others receive; to collect the money and see that it is applied to the uses of the improvement. Its authority must be strictly pursued. (McCullough v. The Mayor of Brooklyn, 23Wend, 458; Lake v. The Trustees of Williamsburgh, 4Denio, 520; Sharp v. Speir, 4 Hill, 76.) The proceedings had under the resolutions of the 1st of June and the 13th of July, 1852, for the grading and paving of Green-street, between Washington and Michigan-streets, were a due and complete execution of the powers of the common council on that subject. The trust was executed and the power of the trustee exhausted. All the subsequent proceedings referred to in the bill of exceptions, for the assessment of the damages of the owners of lands injured by the improvement, were without authority and void. They afford no justification for the seizure of the property of the plaintiffs, which is the subject of complaint in this action.
It is hardly necessary to say that the acts out of which the plaintiffs' cause of action arose, were matters within the scope of the corporate powers of the city of Buffalo. The common council had power to grade and pave the street: to cause the damages done to the owners of lands to be assessed upon other lands benefited: to issue a warrant to collect the moneys assessed. What was done was an irregular and illegal exercise of a power, which the common council doubtless possessed. For such acts of its authorized agents, the corporation is liable in an action of *Page 520 
tort. (2 Kent's Com., 284; Ang. Ames on Corp., 250, 330.)
The judgment should be affirmed.
A majority of the court concurred in this judgment. DENIO, C.J., COMSTOCK and BOWEN, Js., dissented; the chief judge delivering the following opinion.