### CAVAN *v.* CITY OF BROOKLYN.[1]

*(City Court of Brooklyn, General Term. June 23, 1889.)*

MUNICIPAL CORPORATIONS—ACTIONS—NOTICE OF CLAIM.

    Laws N. Y. 1886, c. 563, §§ 1, 2, which provide that claims against the city of Brooklyn must be presented in detail, verified by the claimant, to the comptroller, for adjustment, else an action thereon cannot be maintained, do not apply to actions for torts.

Appeal from special term.

Action by Thomas J. Cavan against the city of Brooklyn. A demurrer to the complaint was overruled, and defendant appeals.

Argued before VAN WYCK and OSBORNE, JJ.

*Almet F. Jenks,* for plaintiff. *William J. Gaynor,* for respondent.

VAN WYCK, J. This is an action to recover damages for injuries alleged to have been done to plaintiff's horse and wagon through the negligence of defendant. Does the following act (Laws 1886, c. 563) apply to this action? "Section 1. No action * * * shall be prosecuted or maintained against the city of Brooklyn, unless it shall appear by, and as an allegation in, the complaint * * * that at least 30 days have elapsed since the claim or claims upon which said action * * * is founded were presented in detail and duly verified * * * to the comptroller of said city for adjustment, and that he has neglected or refused to make any adjustment or payment thereof for 30 days after said presentment. Sec. 2. The comptroller may require any person, presenting for settlement an account or claim, * * * to be sworn before him touching such account or claim, and * * * to answer orally as to * * * the justness of such account or claim." If the provisions thereof do apply to actions for torts, a pleaded compliance therewith is a condition precedent to the right to maintain this action. *Reining*

---

[1] Affirming 2 N. Y. Supp. 21.

*v. Buffalo,* 102 N. Y. 308, 6 N. E. Rep. 792; *Porter* v. *Kingsbury,* 71 N. Y. 588. This leaves for our consideration the single point raised on this appeal. Does the use of the word "claim," in connection with its presentation to comptroller for "adjustment" and "payment," and in its association three times with "account or claim," manifest an intention on the part of the legislature to limit these provisions of this act to actions on contract, and to exclude therefrom those on torts? In this examination we do not approach either a novel or original proposition; but we are confronted by a number of decisions which are not free from apparent conflict at least; but they virtually adjudicate the point in controversy in favor of the respondent. We fully recognize the importance of never departing from the rule of *stare decisis,* except in extreme cases; nevertheless, we shall not content ourselves with simply citing the authorities which we deem conclusive of this controversy, but we shall review the reasons convincing us of the correctness of the result reached by the courts in those authorities. Language is only a conveyance in which thoughts and ideas are transmitted from one to another. The multiplicity of thoughts, and the complexity of ideas, necessitated either a startling increase in the coinage of new words, or the giving to existing words many meanings, such as primary or secondary, general or specific, popular or technical. This variety of signification, found in the same word or phrase, has been the cause of no little embarrassment, both to philosophers and courts. The former, largely from this cause, in reasoning from the same phenomena, have reached opposite results, such as, "All is mind," or "All is matter;" the latter (courts) have reached equally antagonistic results, from the same cause, in the construction of statutes, in which the same or like words and phrases are used in the same or like connection. The contest in this case fairly represents the difficulties in that respect. A system of well-authenticated rules has grown up, from a long series of judicial decisions, for the purpose of securing a correct and uniform construction of statutes. It now devolves upon us to sift the act in question through such of these rules as are applicable thereto. It is wise, according to Coke, to consider the prior law, and the defect therein; the remedy of the new law, and the reason thereof. The prior law, the Brooklyn charter, (Laws 1873, c. 863, tits. "Departments of Finance," "Audit and Treasury,") provided that a claimant should present his "bill or claim" on contract, to the auditor, for his approval or disapproval; if approved, then to the comptroller, for his approval and payment, or disapproval. If the latter, then the city was liable at once to action on such "bill or claim." But this act (Laws 1886, c. 563) interposes its protecting provisions, which operate to stay the commencement of such action till 30 days after claimant shall have presented a verified detailed statement of his "account or claim" to comptroller, and submitted himself to a sworn, oral examination as to its justness. It is evident, from a casual reading of the charter, that the only claims that can be paid by the comptroller, after the approval of the auditor and himself, —a kind of double audit, defined to be an "examination and adjustment,"— are "bills or claims" on contract. Judgments, and demands of damages for the torts of the city, can only, under the charter, be paid by the comptroller, in pursuance of a resolution of the legislative branch of the city government, duly approved by the mayor. The defect of the prior law was that the city was liable to action on claims on contract before the comptroller (the head of the department of finance) had full opportunity to examine into the justice of such claims, which he could pay when submitted to him for his approval. The remedy of the new law gave the comptroller 30 days' time, a detailed, verified statement of the claim, and the right to a searching oral examination of claimant under oath, and subject to the penalties of perjury, to enable him to ascertain the honesty and correctness of the claim. The reason of this remedy was to prevent hasty and needless actions against the city. This leads us to the belief that it was not the intent of the legislature to include

demands for the torts of the city within the provisions of this act, for the comptroller has no power to act upon such demands, except in pursuance of resolution of the common council, approved by the mayor, directing the payment of same by comptroller, either before or after judgment thereupon; which he must obey without the exercise of any discretion on his part. The legislature will not be presumed to be ignorant (1) of the fact that a certain word has acquired a technical meaning in connection with the subject-matter with which the statute deals; (2) of the usual effect of the association of generic and specific words of a cognate sense; (3) of the course of legislation on the same or kindred subjects; (4) of the use, in common, of like words and phrases in cognate statutes; (5) of that difference of intention naturally suggested by the use of same words and phrases in one of two cognate statutes, with additional words expressly including a special subject, and in the other without such additional words; (6) or of the decisions defining judicially the meaning of like words or phrases in such kindred statutes. Therefore, it is both proper and helpful in the construction of statutory language, the meaning of which has been questioned, to carefully examine the history of the words used in reference to the subject-matter of the statute, to closely scrutinize the association of the words, and to make a critical survey of all the enactments of the legislature of the same state, which are *in pari materia*, or relate to a cognate, similar, or an analogous subject, including those prior, contemporaneous, or subsequent to the passage of the one, the meaning of which has been doubted. *Smith* v. *People*, 47 N. Y. 330; *Powers* v. *Shepard*, 48 N. Y. 540; *Taylor* v. *Delancy*, 2 Caines' Cas. 151. The word "claim," used in reference to the subject of judicial proceedings with nothing in the context expressive of a contrary sense, seems to have acquired a technical meaning of claim on contract. This restricted sense the text of the Brooklyn act favors by placing it in company with "account and adjustment." *Howell* v. *Buffalo*, 15 N. Y. 512; *Taylor* v. *Cohoes*, 105 N. Y. 54, 11 N. E. Rep. 282; *Gage* v. *Hornellsville*, 106 N. Y. 667, 12 N. E. Rep. 817. Words, like individuals, are known by their companions. *Noscitur a sociis.* They are used in their cognate sense, when associated together. "Public places"—streets or roads—do not include "theaters or churches;" "public places"—theaters or churches—do not include "streets or roads." The more general word is restricted to a sense analogous to the less general. The generic word, following a specific one of the same nature with itself, is restricted to the genus to which the specific word belongs. "No tradesman, artificer, or other person," in a Sunday law, does not include a "coachman," or "farmer." End. Interp. St. 400, 405; *McGaffin* v. *Cohoes*, 74 N. Y. 387; *Flanagan* v. *Hollingsworth*, 2 How. Pr. (N. S.) 391, affirmed in court of appeals on opinion of general term, 108 N. Y. 621, 15 N. E. Rep. 74; *Baker* v. *Ludlow*, 2 Johns. Cas. 289; *Smelting Co.* v. *Richardson*, 3 Burrows, 1341.

The word "account" in jurisprudence, is a statement of a pecuniary transaction, and "is applicable to matters of contract, and not of tort." *Quinlan* v. *Utica*, 11 Hun, 221, affirmed, 74 N. Y. 603. "Claim," is a word of more general signification. Every account is a claim, but every claim is not an account. When they are associated together, as they are in this act, viz., "account or claim," the latter is restricted to the genus of demands to which the former belongs,—those on contracts. This particular association of these two words has frequently occurred in statutes, and also received the consideration of the courts. In the Buffalo charter of 1853, (Laws 1853, c. 230, tit. 5, § 1,) *in pari materia* to this Brooklyn act, it occurs; and in *Howell* v. *Buffalo*, 15 N. Y. 512, the effect of the association was decided to be as above stated. In *Quinlan* v. *Utica*, 74 N. Y. 603, to the same effect. In *Kelley* v. *City of Madison*, 43 Wis. 638, the word "account" or "demands" was used in a statute on a similar subject, and it was held that "demands" was restricted to the genus to which account belonged, viz., those on contracts. In *McGaffin*

*v. Cohoes,* 74 N. Y. 387, that most comprehensive of words in legal proceedings, "liability," was held to be restricted to those *ex contractu,* by the word "contract," in the phrase "claims on contract, obligation, or liability." In this state there is a number of these special acts, like this Brooklyn one, in restraint of actions against cities, in default of presentation of the claims upon which they are founded. There is a general act in restraint of actions against cities for personal injuries, and one in restraint of the right to recover costs in default of presentation of the claims. Here are two classes of these acts. In one, words are used, in connection with "claim," expressly including claims *ex delicto,* and, in the other, no such descriptive words are used. The decisions on the latter class in this state have been to the effect that such want of expressed intent therein, in the face of such expressed intent in the other class, clearly indicated an exclusion of claims *ex delicto* from their provisions, except in the cases of *Duryea* v. *Mayor, etc.,* 26 Hun, 124, and *Reed* v. *Mayor, etc.,* 31 Hun, 312, reversed, 97 N. Y. 620. A close reading of the reports, appeal-books, and printed points of these two cases will show that the conflict thereof with the other decisions is not real, but only apparent. Section 3245, Code Civil Proc., provides that "costs cannot be ＊ ＊ ＊ awarded to plaintiff in an action against ＊ ＊ ＊ a municipal corporation, in which the complaint demands judgment for a sum of money, unless the claim upon which it is founded shall be presented before commencement thereof." This section is a re-enactment of Laws 1859, c. 262, § 2, and is substantially couched in the same language. Its object was like that of this Brooklyn act, to confer a benefit upon cities in default of presentation of claim for adjustment or payment. The expression, "an action ＊ ＊ ＊ in which the complaint demands judgment for a sum of money," is broad enough to include actions *ex delicto* as well as *ex contractu,* and does do so, as will be seen by reference to section 3228, subd. 4. There is only a single word in the statute of 1859, or section 3245 of Code, viz., "claim," standing alone, with no word of limitation, which the court could seize upon to restrict the application of these acts to actions *ex contractu.* This, our court of last resort has done. *McClure* v. *Supervisors,* 3 Abb. Dec. 83, (1867;) *Childs* v. *Village of West Troy,* 23 Hun, 68, (1880;) *Taylor* v. *City of Cohoes,* 105 N. Y. 54, 11 N. E. Rep. 282; *Gage* v. *Village of Hornellsville,* 106 N. Y. 667, 12 N. E. Rep. 817. The general purpose of these acts, (Laws 1859, c. 262, Code, § 3245) is almost identical with that of this Brooklyn act,—to make the failure to duly present the claim beneficial to the city. There is a clearer intent manifested in the latter act than in the two former to use the word "claim" in this restricted sense, by virtue of its association with "account or claim." We see no good reason why our court of last resort should disturb a question so well settled by the above authorities. No great wrong will be done by adherence thereto. If it is desirable to require the same formalities in actions on torts, then let the Brooklyn authorities secure an amendment to that effect, as Buffalo did when it learned, from the decision in *Howell* v. *Buffalo,* 15 N. Y. 512, that the Buffalo charter of 1853 (Laws 1853, c. 230, tit. 5, § 1;) did not embrace actions on torts by the use of the expressive words "damages for wrongs or injury" in the amended charter, (Laws 1870, c. 519, tit. 3, § 7.) This amendment is strong evidence that the legislature used the word "claim" in the restricted sense in the first charter, and still stronger that it was so used in the Brooklyn act. *In re Enston's Estate,* 21 N. E. Rep. 87, (1889.)

This view is further supported by the passage, on the same day of this Brooklyn act, of another act, (Laws 1886, c. 572,) which requires claims for "personal injuries" to be presented to the comptroller of Brooklyn, and other cities of over 50,000 inhabitants. The contention that the legislature intended to restrict the word "claim" to those on contract is favored by the decisions in *Quinlan* v. *Utica,* 11 Hun, 217, (1877,) affirmed, 74 N. Y. 603, and *McGaffin* v. *Cohoes,* Id. 387, (1878:) also, in *Kelley* v. *City of Madison,* 43

Wis. 638, on a similar statute of that state. In a statute of limitations the phrase "signed by the party chargeable thereby" was held not intended to include the signature of an agent, because, in other cognate statutes, express words had been used to accomplish that purpose when it was so intended. *Hyde* v. *Johnson*, 2 Bing. N. C. 776. So the use of words in connection with "claim," such as for "damages for wrongs or injury," in Buffalo charter, (Laws 1870, c. 519, tit. 3, § 7;) "for injuries to person or property, * * * with an abstract of the facts," in Troy charter, (Laws 1872, c. 129, § 10;) and "for personal injuries," in Laws 1886, c. 572, expressly including claims *ex delicto*,—signifies an evident intention to exclude those from such cognate acts, such as this Brooklyn one, in which the word "claim" stands alone, without any such expressed intention to include them. The supreme court of the Second department, May 18, 1889, has decided that this act does not embrace actions for torts. *Harrington* v. *City of Brooklyn*, *ante*, 673. The earnest attitude of appellant's counsel, in defense of his contention, deserves a review of the authorities upon which he relies. The general term of the First department, apparently, has decided that the analogous act for New York city includes claims *ex delicto*. *Duryea* v. *Mayor, etc.*, 26 Hun, 120; *Reed* v. *Mayor, etc.*, 31 Hun, 312, reversed, 97 N. Y. 620. But, in both of these cases, compliance with the statute was complete, and properly pleaded. The printed points of plaintiff, in each case, at general term, did not suggest that the act did not embrace torts, and it was conceded by all parties therein that it did include actions *ex delicto*. There was no litigation of this point in those cases; under such circumstances the incidental expression in the opinion of the court, that the cause of action was within the provisions of the act, can have but little weight as an authority on the question involved in this case, for it was only a statement of what both counsel conceded to be the rule. The first case was to recover damages caused by the overflow of water. On the trial, defendant requested the court to restrict the recovery to damages for overflows occurring before the commencement of the action, which was refused. The general term held this to be error, because the overflow, happening after the commencement of the action, was a distinct cause of action, and could not be recovered for in an action brought before it arose. The court then goes on to say that the request was more favorable to plaintiff than he was entitled to, as the cause of action was embraced in the statute requiring presentation of claims to comptroller, which should restrict the recovery of damages for overflows occurring before the presentation of the claim. Judgment was reversed, and new trial was ordered. There was no appeal from this decision, but new trial was had; and an examination of appeal-book and points in court of appeals from this last trial shows that no further point was made on this statute. Appellant's counsel is mistaken that the report of this case in 62 N. Y. 592, was an appeal from the decision reported in 26 Hun, 120. It was from the first trial of the action, and no such question as we are now considering was involved therein. In *Reed* v. *Mayor, etc.*, an actual and pleaded compliance with the statute was complete. The only question was, conceding the application of the statute to an action for negligence, could the complaint be amended to increase the damages from $5,000 to $10,000, when the demand, with statement of facts constituting the cause of action, served on the comptroller, was for $5,000? The general term decided this in the negative. On an appeal from this decision, the court of appeals (97 N. Y. 620) decided, assuming the act applied, it could be so amended. Plaintiff's points in court of appeals made no claim that the act did not apply, and defendant's points stated that plaintiff conceded the act does apply. In *Dickinson* v. *Mayor, etc.*, 92 N. Y. 584, actual and pleaded compliance existed, and both parties not only conceded its application, but the plaintiff relied on that position to save his action from being barred by the statute of limitations; but the court held, on the conceded application of this statute by both parties, that it did

not postpone the operation of the statute of limitations until the demand had been made on the comptroller. These three cases are the chief reliance of appellant to sustain his theory; but it is evident that there was no judicial testing of the question raised on this appeal, as to whether the statute included claims *ex delicto* as well as *ex contractu.* The Buffalo charter (Laws 1870, § 7, p. 1179) affirmatively embraces claims *ex delicto;* so in *Reining* v. *Buffalo*, 102 N. Y. 308, 6 N. E. Rep. 792, there was no discussion of that point. The court merely decided that pleaded compliance was a condition precedent to the maintenance of the action. The Troy charter (Laws 1872, c. 129, tit. 6, § 10) expressly includes claims *ex delicto* "for injuries to person or property, * * * with an abstract of the facts out of which the causes of action arose." The court, in *Minick* v. *Troy*, 83 N. Y. 516, held that, in this state, the "claim" and "cause of action" meant the same thing, facts constituting the same. In *Russell* v. *Mayor, etc.*, 1 Daly, 266, this question on the New York city act was before the court, which held that actions for torts were embraced; and it was based on the ground that the comptroller, under New York charter, (Laws 1857, p. 874, § 22,) was specially empowered to adjust and settle claims, *ex delicto*, against the city. This reasoning will not support a like decision on the Brooklyn act, for it already has been shown that, under the Brooklyn charter, the comptroller has no such power. These cases disclose nothing to shake our confidence in the correctness of the construction given to the Brooklyn statute (Laws 1886, c. 563) by the trial court herein. Judgment must, for the foregoing reasons, be affirmed, with costs.

OSBORNE, J., concurs.