# Commonwealth *v.* Philadelphia City and County, Appellant.

*Tax on loans—Collection—City treasurer—Agency.*

In the collection of the tax on loans, the city treasurer is the agent of the city and not of the commonwealth, and until the tax is paid to the state treasurer the city is liable for the loss of it occasioned by the misconduct of the city treasurer.

*Tax—Collection—Public officers—Laches.*

The right of the commonwealth to a tax cannot be lost by the neglect or unfaithfulness of her agents; but this rule applies only to the tax and not to penalties.

*Penalties—Interest on tax—Attorney general's commissions.*

A city collected the tax on loans, and paid it over to the city treasurer. For the whole year during which the money was received and was due and payable to the commonwealth, and for more than four months afterwards that the treasurer was in office, not a single quarterly return or payment, as required by law, was requested or exacted by the commonwealth's officers. *Held* that interest on the tax at twelve per cent should be lowered to six per cent, and that the attorney general's fees on the tax settlement should be stricken off, these amounts being considered as penalties.

Argued May 31, 1893. Appeal, No. 31, May T., 1893, by defendant, from judgment of C. P. Dauphin Co., Jan. T., 1892, No. 315, for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Appeal from tax settlement.   Before SIMONTON, P. J.

The case was tried without a jury, under the act of 1874.

The opinion of the court below was as follows:

" 1. On June 5, 1890, John Bardsley, treasurer of the city of Philadelphia, reported to the chairman of the finance committee of city councils that the amount of state tax on loans which would be due from the city to the state July 1, 1890, would be $47,444.88, and accompanied this report with a draft of an ordinance, which, if passed by the city councils, would appropriate the amount of tax so due, together with the amount of interest to become due, June 30, 1890, from which the law required the tax to be deducted; and the ordinance was accordingly passed by councils and approved by the mayor of said city June 16, 1890.

" 2. On July 6, 1890, a check on the Third National Bank of Philadelphia, signed John Bardsley, city treasurer, was drawn to the order of D. C. King, who was chief clerk in the treasurer's office, for $47,444.88, the amount of tax due July 1st, as above stated.   This check, after being indorsed by D. C. King, was indorsed ' John Bardsley, city treasurer,' and ' D. C. King, attorney, for deposit only,' and delivered to the Manufacturers' National Bank for collection and deposit, and the amount was credited to an account kept by said bank with John Bardsley individually in which he had also deposited moneys received for license fees on account of the commonwealth.   This bank, as well as many others, was a depository of moneys received by John Bardsley in his character as city treasurer, but, as stated above, the deposit to which the amount of the check was credited was kept in the name of John Bardsley individually.

" 3. Checks were drawn by John Bardsley against this account from time to time in his individual name, but to what purpose the sums thus drawn from the account were applied does not appear.   The $47,444.88 tax on loans due July 1, 1890, was never paid to the state treasurer, or received by the state ; and it was admitted by the attorney general on the trial that John Bardsley ' is a defaulter and embezzler of state and city moneys, not, however, of loans-tax payable to the state by him, and is now a convict in the Eastern Penitentiary.'

" 4. The same course was pursued in December, 1890, with respect to the interest falling due December 31, 1890, and the

state tax accrued thereon, which amounted to $43,167.75, including the passage of a like ordinance, the drawing to the or·der of D. C. King of a corresponding check, which, with the same indorsements, was deposited in the said Manufacturers' National Bank to the individual credit of John Bardsley, and the withdrawing of the amount so deposited by him, on checks in his own name, and the state tax, which accrued when the interest was paid on December 31, 1890, was never paid to the state treasurer, nor received by the commonwealth.

" 5. Prior to the settlement of the account appealed from, a settlement was made by the auditor general and state treasurer for the same account against John Bardsley, treasurer, which was subsequently withdrawn, and the settlement now appealed from was substituted in its stead.

" The amount of tax on loans due July 1, 1890, as stated by the city treasurer in his report to the chairman of the finance committee of councils, was $47,444.88, while the amount reported by him to the auditor general for the same period and claimed in the settlement was $43,345.61. How this difference occurred we are unable to state.

" 6. The bond required by the act of assembly to be given by the city treasurer to the commonwealth of Pennsylvania was given by John Bardsley in the sum of $120,000, and it was admitted on the trial by the commonwealth that this amount had been collected from his sureties, and that no part of it has been applied to the payment of the loans-tax account therein appealed from ; and that the sureties did not direct any application of the amount so paid by them to this account.

" We have found the facts as above in greater detail than we think necessary or strictly relevant to the question before us, because they furnish a history of the transaction and are considered important by the counsel for the defendant. In our opinion, the vital fact is that the tax which became due during the year 1890 on the indebtedness of the city of Philadelphia was not paid by the city treasurer, or by any other person, on behalf of the city, to the commonwealth.

" Eleven specifications of objections to the settlement have been filed with the appeal on behalf of the defendant, which are substantially as follows : That there is no law requiring or authorizing defendant either to collect or to pay any tax upon

its indebtedness; that defendant has not collected or received any tax or done or omitted anything which would render it liable to pay said tax to the state; that the tax on municipal indebtedness is payable by the bondholder and not by the debtor, and that if any tax was to be collected, this was to be done by the city treasurer and not by defendant, and that in making such collection, and in everything relating thereto, the treasurer was the agent and representative of the state and not of the city, and that it is not liable for any neglect or refusal of the treasurer to collect or for any misfeasance on his part, or misapplication of the tax collected, or failure to pay over the same to the state; that the settlement should have been made against the treasurer individually, and not against defendant, and is illegal and void ·as against defendant, and that if there was any neglect or failure of the treasurer to collect the tax, or pay it over if collected, it was occasioned by the default and neglect of the officers of the commonwealth to require him within the time prescribed by law so to do, and that for each and all of these reasons the settlement is illegal and void.

" Section 42 of the act of April 29, 1844, P. L. 501, enacts as follows: 'It shall be the duty of the treasurer of each incorporated city, district and borough of this commonwealth, on the payment of any dividend or interest to any holder or holders or agent claiming the same on any scrip, bond or certificate of indebtedness issued by such incorporated city, district and borough aforesaid, to assess the tax herein made and provided for such purposes upon the nominal value of each and every such evidence of debt; said tax to be deducted by the said treasurer, upon the payment of any interest or dividend aforesaid, and the ·same shall be held by him until paid over to the state treasurer.'

" It has frequently been decided that this section of the act of 1844 is still in force and that it provides the mode in which the tax on loans issued by cities and boroughs and due from the bondholders to the state is to be assessed and collected: Com. v. City of Chester, 123 Pa. 626, where it is said on page 639 that up to this time state taxes on municipal loans have been regularly collected under the act of 1844.

" Section 3 of the act of April 30, 1864, P. L. 218, applied the provisions of this section to the loans issued by private cor-

porations and imposed upon their officers with respect to the collection of the tax due on their loans and indebtedness the same duties which were imposed by the act of 1844 upon the treasurers and other officers of municipal corporations; and the several acts taxing such loans, which have been passed from time to time since 1864, have substantially continued these provisions.    The first of these was the act of May 1, 1868, P. L. 108, to revise, amend and consolidate the several laws taxing corporations, brokers and bankers.    This was repealed and supplied by the act of March 21, 1873, which was in turn repealed by the act of April 24, 1874.    Thereafter no act required the tax on corporation loans to be deducted from the interest and paid over to the state until the act of June 7, 1879, P. L. 112, section 17, which was continued by the supplement of June 1, 1881, P. L. 37, section 2, and this by the further supplement of June 30, 1885, P. L. 193, section 4 of which enacts ' that hereafter it shall be the duty of the treasurer of each private corporation incorporated by or under the laws of this commonwealth . . . . upon the payment of any interest on any scrip, bond or certificate of indebtedness, issued by such corporation to residents of this commonwealth and held by them, to assess the tax imposed and provided for state purposes upon the nominal value of each and every such evidence of debt, and report annually on the first Monday of November to the auditor general the amount of indebtedness of the corporation owned by residents of this commonwealth as nearly as the same can be ascertained; and it shall be his further duty to deduct three mills on every dollar of the interest paid as aforesaid and return the same into the state treasury within fifteen days after the 31st day of December in each year.'

" It has been the uniform practice ever since the act of 1864 was passed to settle the accounts against the corporation, and not against the treasurer individually for failure to collect and pay over the tax imposed on the holder of the bonds of private corporations by said act, and the subsequent acts above referred to; and the legality and validity of this practice has been often affirmed by the court.    In Com. v. Lehigh Valley Railroad Co., 129 Pa. 429, Justice CLARK, delivering the opinion of the court, said on page 449 : ' The company was bound to see to it that the treasurer performed his duty in assessing the tax and

retaining the amount out of the interest. If he made default in this, his default must be visited upon the company which he represents and for which he acts : Com. v. Delaware Div. Canal Co., 123 Pa. 594. The settlement is made against the company, not for taxes of the company, but for taxes which the company, through its treasurer, ought to have collected. If the treasurer has failed or refused to perform what the law plainly required him to do, and has thereby relinquished his right, upon whom the primary obligation would otherwise have rested, the company, whose interest he represented, and whose instructions he is presumed to have pursued, is rightly held for the consequences of such willful default: Com. v. Lehigh Valley Railroad Co., 104 Pa. 89.' And in Commonwealth v. Delaware Div. Canal Co., cited above, the same learned Justice said: ' We are clear in our convictions that if there is any constitutional authority to impose the tax under the 4th section of the act, the settlement by the accounting officer was rightly made against the company. The act constitutes the company or its treasurer, as such, the collector of the tax, and upon failure to discharge the duty imposed by law, the settlement is properly made against the company whose servant he is, as in case of the default of any other officer of the government upon whom a like duty is imposed. The obligation rests upon the company, but as the company can only act through its officer, the default of the officer is esteemed the default of the company, and the penalty is visited upon them. The treasurer is designated in order that there may be no evasion ; he has exceptional opportunities to know, and has the power in his own hands to perform the several matters required. This system of collecting the state taxes was first introduced under the 42d section of the act of April 29, 1844, P. L. 501, where it is applied to municipal loans, and by the act of April 30, 1864, P. L. 218, was first extended to the loans of private corporations.'

" A comparison of section 4 of the act of 1885 with section 42 of the act of 1844, both of which are quoted above, will show that they are substantially the same so far as the liability of the corporation is concerned, and if the former imposes the liability upon a private corporation for the failure of its treasurer to perform the duties prescribed by the act, it is manifest that the latter imposes a like liability upon a municipal corporation.

If, therefore, this were all the legislation on the subject, we should not hesitate to decide that the city is liable, and that the account is properly settled against it.   But the case is made still plainer by section 4 of the act of April 3, 1864, P. L. 218, which is as follows : 'That the treasurer of each county and city, the burgess or other chief officer of each incorporated district or borough of this commonwealth, shall make return under oath or affirmation to the auditor general of the amount of scrip, bonds or certificates of indebtedness outstanding by said county, city, district, borough or incorporation as the same existed on the first day of January . . . . of each succeeding year . . . . together with the rates of interest thereon; . . . . that on the receipt of said returns the auditor general shall proceed to settle the accounts of each county, city and borough with the commonwealth, fix the state tax due and unpaid and transmit notice of the amount by mail to the officers making said returns ; and that if the amount so found due shall not be paid within sixty days, the attorney general shall sue and collect the same with interest from the date of such settlement; and hereafter it shall be the duty of every treasurer of every county, city, borough and incorporated district in this commonwealth to deduct the said state tax on payment of any interest or dividend on debts due by the city, county, borough or incorporated district, and pay the same over to the state treasurer within thirty days after the said interest or dividend has fallen due.'   See 2d proviso, section 2, act June 1, 1889, P. L. 421.

" The purpose of this act probably was to supply the omission in the act of 1844, sec. 42, of any provision requiring the treasurer of counties and cities to report to the auditor general the amount of indebtedness on which interest was paid and tax became due, so that he might know whether all the tax had been deducted and paid over to the state treasurer ; and the failure to give him express authority to settle accounts for the tax unpaid.   The act is somewhat inartificially drawn, and the logical order perhaps is not carefully followed, but we think its intent and meaning is sufficiently plain.   The last clause reenacts sec. 42 of the act of 1844.   The first clause requires the treasurer of counties and cities, and the chief officer of boroughs to make returns of the indebtedness outstanding on the preceding first day of January ; and the middle clause provides 'that

on the receipt of said returns the auditor general shall proceed to settle the accounts of each county, city and borough with the commonwealth, fix the state tax due and unpaid, and transmit notice of the amount by mail to the officers making said returns.' Briefly expressed, we think the meaning of the section is this: The treasurer is required, when he pays the interest, to deduct the tax and pay it over to the state treasurer within thirty days after the interest became due, and at the end of the year he is required to make return of the amount of indebtedness outstanding for the previous year; and on receipt of this return, the auditor general is to settle an account against the city giving it credit, of course, for the tax paid over by the treasurer, and, if any remain unpaid, to ' fix the tax due and unpaid,' which the attorney general must sue for if not paid over in sixty days.

" It was shown on the trial that the practice in the auditor general's office has not been uniform, but that while the accounts have been settled against the treasurers of counties, the practice has been to settle them against all the cities and boroughs in the commonwealth except the city of Philadelphia; but the act applies alike to all, and two opposite constructions could not be imposed upon it by the practice of the accounting department.

" But it was earnestly contended by the able counsel who argued this case that Phila. v. Martin, 125 Pa. 583, is an authority in favor of the defendant.

" The only point decided in that case was, that notwithstanding sec. 15 of the act of March 31, 1876, P. L. 13, the compensation which the state is required to pay to county treasurers as commission for the collection of its revenues, belongs to the treasurers, and not to the counties; and it is an end of controversy for us on that point. But this does not conclude the question now before us, unless the mere fact that the state pays the treasurer a commission for the collection of its revenues, including the assessing, deducting and paying over the tax on loans, when interest is paid, makes him alone responsible to the state for the performance of his duties, and releases the county from liability in the premises. That this is not the case is manifest, for the act requiring the treasurer of private corporations to assess, deduct and pay over the tax, allows him

a commission for so doing, and yet as we have seen above, the corporation is liable for his failure so to do, and the account for the resulting liability is properly settled against it. The act of May 1, 1868, sec. 11, P. L. 108, allows to treasurers of private corporations 'the same commission or compensation as is now allowed by law to county treasurers;' and the act of June 30, 1885, sec. 4, P. L. 193, provides that the treasurer's 'compensation for his services shall be the same that city and borough treasurers receive for such services;' and this compensation has always been allowed to treasurers of private corporations for assessing, deducting and paying over the tax. Thus the treasurer of a private corporation and the city or borough treasurer are paid the same compensation 'by the state for the same services; if then such payment makes one of them a state officer, or if he must be a state officer to become entitled to such payment, certainly the other must also be such.

"But if, on the other hand, the right to a receipt of commissions by the treasurer of a private corporation can consist with the liability of the corporation to the state, as we have above abundantly shown it actually does, then the right to a receipt of commissions by the city treasurer must be consistent with a like liability of the city.

"Another argument to which some weight was given in Philadelphia v. Martin is, that, because the city treasurer is required to give a bond to the state, he is a state and not a city officer. This argument is answered by Justice STRONG in Schuylkill Co. v. The Com., 36 Pa. 524, delivering the opinion of the court, where, after deciding that the county is primarily liable to the state for the tax on personal property, he adds, page 536 : 'Nor is it any valid objection to this construction of the act that the county treasurer is required by law to give bond for the faithful discharge of all the duties enjoined upon him in behalf of the commonwealth, and for the payment of all moneys received by him for the use of the commonwealth. This was required by the act of 1834, ten years before the passage of the act of 1844, which directed the state tax to be charged to the county, and besides he is still a county officer, in whose election or appointment the commonwealth has no voice, and he may be removed from office or compelled to give additional security at the instance of the county commissioners.'

" And in Hughes v. Com., 48 Pa. 66, in an action on a bond, given to the state by the county treasurer, to recover the amount of an account settled by the auditor general against the treasurer, where a surety defended, because the settlement made by the auditor general and state treasurer against the county treasurer embraced an item of $998.99 for tax on real and personal property, on the ground that as the county was liable to the state for this tax the treasurer was not liable, the court said, ' the liability of the county in no wise works the release of the sureties on the state bond ; ' again recognizing the principle that the taking of a bond from the treasurer by the state does not imply that the city is not liable.

" In Schuylkill Co. v. Commonwealth, cited above, it was expressly decided that by the act of April 29, 1844, the several counties of the state are made liable as principal debtors for the quota of state tax assessed on the property within such counties respectively ; Justice STRONG saying: ' To decide otherwise would do violence alike to the letter and spirit of the act of April 29, 1844. Every part of that act points to the county as the principal debtor.' But a part, no doubt a large part, of the compensation allowed to the defendant in Phila. v. Martin, was for commissions for paying over to the state the tax on personal property for the years mentioned in the case stated ; and if the right to commissions implied freedom from liability on the part of the county, or if the fact that the county is liable determined that the commissions are not to be allowed to the treasurer, the decision in Phila. v. Martin could not possibly stand. This we think shows conclusively that the decision in that case does not affect the question now before us of the liability of the city, and that the right to commissions may be, and is, entirely consistent with the liability of the city to the state here contended for.

" After the most careful consideration of all the objections urged on behalf of the defendant, and without intending to say or even to suggest that an account against the treasurer might not be sustained, we cannot doubt that the account in the case before us is properly settled against the city. The law imposes the duty of assessing, collecting and paying over the tax on the city treasurer in his official capacity as treasurer and not as an individual. He is selected by the city and not by

the state; he acts for the city and it is responsible to the state for the proper performance of his duty. We can see no difference in this respect between the position occupied by a city treasurer relative to the city and the treasurer of a private corporation relative to the corporation; each is equally liable to the state for the proper performance by its treasurer of the duty to assess, deduct and pay over, the tax, and when he has failed to perform this duty, under such circumstances as to create a liability in favor of the state, that liability is incurred by the corporation whose officer he is.

" Section 42 of the act of 1844, and section 4 of the act of 1864, and some of the succeeding acts on the same subject, require the treasurer to ' deduct ' the tax on payment of the interest; while, by some of the subsequent acts, he is required, on payment of the interest, to ' retain ' the tax. Whichever term is used, the meaning is the same, and, physically, the treasurer neither deducts nor retains, but merely pays out of the treasury of the corporation or municipality, to its creditors, the amount of interest due, less the tax, and the amount of the tax remains in the treasury of the corporation, and does not come physically into the possession of the treasurer. It is simply in his custody as treasurer of the corporation, and it would be a breach of trust on his part towards the corporation to withdraw it in any other manner than by payment to the state.

" It is contended on behalf of the defendant that the failure of the treasurer to pay over the amount of the tax to the state was occasioned by the neglect of the officers of the commonwealth to enforce the performance of that duty upon him. It cannot be doubted that it was the duty of the accounting department to charge the city with the amount of the tax on loans due and unpaid on receipt of the proper returns from the city treasurer, and to require him, if he failed in his duty, to make such returns as provided by section 4 of the act of 1864, but it is a well settled principle of law that the state shall not suffer by the neglect of its officers promptly to perform their duties. It is impossible to say whether the treasurer would have failed to pay over if the officers of the state had acted with greater promptness, but whether he would or not, the fact that they did not so act cannot relieve the city from its liability for the

failure of its treasurer to perform the duty imposed by law upon him as the officer of the city.

" It cannot affect the liability of the defendant that it agreed to pay the state tax on a large proportion of its indebtedness when the obligations were issued. The state was no party to this agreement, and its right to the tax cannot be affected by it. The right of the state remained the same whether the tax was to be paid by the bondholder or for him by the city according to its agreement.

" An offer was made on the trial to prove that John Bardsley embezzled the moneys involved in this appeal as well as other large sums of money belonging to the city and county of Philadelphia and to the state of Pennsylvania, which was objected to on behalf of the commonwealth and admitted subject to the objection. We consider the offer irrelevant, and therefore the evidence offered has not been considered by the court.

" There is no evidence in the case which tends to show that any of the obligations on which interest was paid, and in respect of which tax became due, were issued by the county of Philadelphia, and we therefore treat the case as one against the city of Philadelphia only, and our conclusion is that the commonwealth is entitled to a judgment for the amount of the tax which accrued upon its indebtedness not exempt from taxation, upon which interest became due and payable, and was paid during and for the year 1890 on the obligations held and owned by individual residents of the state."

The court directed judgment to be entered for plaintiff as stated in the opinion of the Supreme Court, page 577, below.

Exceptions filed by the city were overruled by the court in the following opinion :

" If the failure of John Bardsley, the city treasurer, to assess, retain, and pay over, the tax claimed in this case was not, in law, the failure of the city, it cannot be held liable therefor. But if his failure or neglect was legally the failure or neglect of the city, it cannot excuse the failure to perform its duty in order to escape its liability by showing carelessness or negligence of the accounting officers in the performance of their duties as prescribed by law.

" There are numerous cases which sustain this statement, some of which we shall cite. In U. S. v. Kirkpatrick, 9 Wheat. 721,

the court decided that sureties are not discharged by the omission of the government officers to enforce the law as to periodical accounting, laches not being imputable to the United States; and Judge STORY, delivering the opinion of the court, said : 'The general principle is, that laches is not imputable to the government; and this maxim is founded, not in the notion of extraordinary prerogative, but upon a great public policy. The government can transact its business only through its agents ; and its fiscal operations are so various, and its agencies so numerous and scattered, that the utmost vigilance would not save the public from the most serious losses, if the doctrine of laches can be applied to its transactions . . . . It is said that the laws require that settlements should be made at short and stated periods; and that the sureties have a right to look to this as their security. But these provisions of the law are created by the government for its own security and protection, and to regulate the conduct of its own officers. They are merely directory to such officers, and constitute no part of the contract with the surety. The surety may place confidence in the agents of the government, and rely on their fidelity in office ; but he has of this the same means of judgment as the government itself ; and the latter does not undertake to guarantee such fidelity.'

"In Com. v. Porter, 21 Pa. 385, it was decided that a county treasurer who fails to pay to the commonwealth the amount due for the state tax received by him, is chargeable with interest; and the omission of the accounting officers to settle his account will not relieve the treasurer from such charge, and Justice LOWRIE, delivering the opinion of the court, said : 'It is no answer to this that the auditor general for a long time neglected to decide upon the account, for it is settled by numerous decisions, beginning with our own case of the Com. v. Wolbert, 6 Bin. 292, that the state is not chargeable with the negligence of its officers in such cases, even as against sureties;' citing U. S. v. Kirkpatrick, supra, and a number of other cases. And he adds further : ' On the principles of common justice, how can it be otherwise ? There is no duty more plainly implied and written than that of a county treasurer to pay ; and how can he excuse his neglect by pleading that of his superior officer to call on him ? His is the first fault, and it is not forgiven be-

cause of a similar neglect of another.   The auditor general did not settle the account; and what of that?   It was no less the duty of the county treasurer to pay; and, if he kept his accounts as he ought to have done, he knew exactly what to pay. His duty was to the state, and not to the auditor general, and he ought to have performed it, and then called for a settlement. The state has been guilty of no negligence, for it has clearly defined the duty of both officers.   One of them, who has neglected his duty, has no right to excuse himself on the ground of negligence of the other.'

" This case is entitled to the greater weight, because it overruled a previous decision of the same court in the same case, Porter v. Com., 17 Pa. 14, which held a contrary doctrine. And it may be worthy of remark that the People v. Jansen, 7 Johns. 332, which also in a very hard case held the doctrine contended for on behalf of the defendant here, was overruled in the People v. Russell, 4 Wend. 570; and it is also declared to be without authority in U. S. v. Kirkpatrick, supra.

" In Haehnlen v. Com., 13 Pa. 618, the court held that a right of the commonwealth will not be destroyed by the laches of its agents, saying: ' The United States v. Kirkpatrick is the leading authority for a principle which covers this case.   While that authority remains unshaken, to show that it was the duty of the accounting officers to prevent the defalcation, is to show nothing.   That case and many others in our own books prove, beyond question, that the right of the commonwealth cannot be lost by the laches of its agents.   The present offers nothing new, nor any circumstances to take it out of the rule of policy we have invariably enforced.'

" In Schuylkill Co. v. Com., 36 Pa. 524, President Judge PEARSON said: ' The general principle long and well established, that the commonwealth cannot suffer through any neglect or omission on the part of its officers, covers many of the delinquencies complained of by the defendant in this case;' and Justice STRONG, delivering the opinion in the Supreme Court, said: ' The commonwealth is not to suffer by the laches of its agent, nor can the county of Schuylkill obtain a discharge from its liability because the state treasurer was not vigilant; citing U. S. v. Kirkpatrick, supra.

" In Com. v. Brice, 22 Pa. 211, it was decided that where a

sheriff was liable to the county for fines and jury fees received by him, the sureties on his official bond were not discharged by reason of the fact that, after his account had been settled by the county auditors and the balance due by him ascertained, the county commissioners had given to him checks to an amount exceeding the said balance, which were paid by the county treasurer without deducting the amount of his indebtedness, and the court applied the principle stated in the above cited cases to a county, and held that its rights were not affected by the negligence of the county commissioners, saying: ' It is inherent in the very nature of the case that the sureties of an officer, who has been guilty of a breach of duty, cannot make any subsequent and consequent neglect of another officer the foundation of a claim that they should be discharged. If they could, then those who have engaged against the primary breach of duty would be allowed to throw the liability for it upon him who committed the consequential one of neglecting to compel its correction, and to make him stand as if he had in this neglected a duty to the sureties of another officer, when he owed the duty, not to them, but to the public only.'

" The principle on which all these cases proceed is illustrated by the case of Amherst Bank v. Root, 2 Metc. 522, where the court, deciding that the sureties of a cashier are not exonerated from liability for his defaults by reason of the neglect of the directors to examine, as required by the by-laws, into the state of the affairs of the bank, said, by SHAW, C. J.: ' Another ground of argument for the defendants was that the sureties were not liable by reason of the culpable negligence of the directors and their agents, inasmuch as the by-laws of the bank made it the duty of the directors to make frequent examinations of the affairs of the bank, to count the money, inspect the books, and generally to watch over its concerns; and it is contended that it does not appear from an inspection of the minutes of the directors that this was done. . . . The adoption of such a principle would lead to this result, that the negligence and fault of one agent, or set of agents, for a corporation would deprive it of the remedy against another for their fault. . . . The idea that the cashier is excused by the act or negligence of the directors arises from considering the board of directors as the corporation, and then applying a very equita-

ble principle that one ought not to recover of a surety damages caused by himself. We think the principle does not apply. The only case which seems to countenance it is the People v. Jansen, 7 Johns. 332, a case which has been often questioned, and which we think is fully answered by the cases of United States v. Kirkpatrick, 9 Wheat. 720, and Miner v. Mechanics Bank, 1 Pet. 46.'

" The principle is further illustrated by the last case cited by Chief Justice SHAW, 1 Pet. 46, where the court held that a usage of the board of directors to permit the cashier to misapply the funds of the bank cannot exonerate his sureties; and Judge STORY, at page 71, speaking of the pleas, said: ' They set up a defence for the cashier that his omission " well and truly to perform" the duties of cashier was by the wrong, connivance and permission of the board of directors. The question then comes to this, whether any act or vote of the board of directors in violation of their own duties, and in fraud of the rights and interests of the stockholders of the bank, could amount to a justification of the cashier who was particeps criminis. We are all of opinion that it could not. . . . The very form of these pleas sets up the wrong and connivance of the board as a justification; such wrong and connivance cannot for a moment be admitted as an excuse for the misapplication of the funds of the bank by the cashier. . . . What is the usage and practice as put in the case? It is a usage to allow customers to overdraw and to have their checks and notes charged up without present funds in the bank. Stripped of all technical disguise, the usage and practice thus attempted to be sanctioned is a usage and practice to misapply the funds of the bank and to connive at the withdrawal of the same without any security in favor of certain privileged persons. Such a usage and practice is surely a manifest departure from the duty both of directors and cashier and cannot receive any countenance in a court of justice. It could not be supported by any vote of the directors however formal; and, therefore, whenever done by the cashier is at his own peril and upon the responsibility of himself and his sureties.'

" A careful consideration of the principles on which the decisions in these cases rest cannot fail to show the fallacy of the reasoning by which the defendants attempt to sustain these exceptions.

" The state can act only through its duly constituted officers. Their duties, and the manner in which they are to be performed and their acts are to be authenticated, are prescribed by law, and they can speak for the state only when performing these duties and authenticating them in the manner prescribed. The legislature can speak for the state only by formal acts of assembly and resolutions. The courts can speak only by formal sentences, judgments and decrees. And the auditor general and state treasurer, in the matter of taxation, can speak only by an account settled in writing, duly entered in the proper register, and sent by certified copy to the party against whom the account is settled. The state is bound by their action when performed in the prescribed manner and within the scope of their jurisdiction, whether it be wise or otherwise, unless it be set aside by an appropriate proceeding; but no one, when called upon by the state to answer for failure to perform a duty to it, the obligation of which does not arise out of their action, but is declared and fixed by law, and is antecedent to and independent of anything they may do, can plead their neglect or failure to act as an estoppel against the state. As is said in Com. v. Porter, supra: ' The state has been guilty of no negligence, for it has clearly defined the duty of both officers. One of them who has neglected his duty has no right to excuse himself on the ground of the negligence of the other.' "

*Error assigned* was entry of judgment.

*M. E. Olmsted* and *Lyman D. Gilbert, John H. Weiss* and *Chas. F. Warwick* with them, for appellant, cited: Acts of April 15, 1834, P. L. 542; April 29, 1844, P. L. 497; May 18, 1857, P. L. 570; May 14, 1874, P. L. 175; May 7, 1889, P. L. 114, Com. v. Penna. Co., 145 Pa. 266; Standard Oil Co. v. Com., 101 Pa. 146; P., F. W. & C. Ry. v. Com., 66 Pa. 76; Com. v. Pittsburgh & Connellsville R. R., 2 Pears. 391; Com. v. Butler Co., 2 Pears. 424; U. S. v. Moore, 95 U. S. 763; Edwards v. Darby, 12 Wheat. 206; U. S. v. Gilmore, 8 Wal. 330; Ins. Co. v. Hoge, 21 How. 66; Mathews v. Shores, 24 Ill. 28; Graham's Ap., 1 Dall. *136; Steiner v. Coxe, 4 Pa. 13; Goddard v. Gloninger, 5 Watts, 209; U. S. v. Recorder, 1 Blatchf. 218; Packard v. Richardson, 17 Mass. 143; Sedgwick on Statutes,

216 ; Endlich, Int. of St. §§ 357, 358, 360 ; Com. v. Durkin, 109 Pa. 138 ; Sheboygan Co. v. Parker, 3 Wal. 93 ; Com. v. Martin, 107 Pa. 185.

*W. U. Hensel,* attorney general, *Jas. A. Stranahan,* deputy attorney general, with him, for appellee, cited : Com. v. Del. Div. Canal Co., 123 Pa. 594 ; Com. v. Lehigh Valley R. R., 104 Pa. 89 ; Com. v. Chester, 123 Pa. 626 ; Phila. v. Martin, 125 Pa. 590 ; Glover v. Wilson, 6 Pa. 290 ; Schuylkill Co. v. Com., 36 Pa. 524 ; Hughes v. Com., 48 Pa. 66 ; Com. v. Reading, 15 W. N. 530 ; Com. v. Allegheny, 16 W. N. 316 ; Com. v. Morrison, 1 Pears. 317 ; Com. v. Wolbert, 6 Bin. 292 ; People v. Jansen, 7 Johns. 332 ; U. S. v. Kirkpatrick, 9 Wheat. 720 ; Com. v. Baldwin, 1 Watts, 55 ; U. S. v. Vanzandt, 11 Wheat. 184 ; Com. v. Baldwin, 1 Watts, 55 ; Haehnlen v. Com., 12 Pa. 618 ; Easton Bank v. Com., 10 Pa. 451 ; Del. Div. Canal Co. v. Com., 50 Pa. 408 ; Com. v. Brice, 22 Pa. 211 ; Miner v. Mechanics Bank, 1 Pet. 49 ; Amherst Bank v. Root, 2 Metc. 522 ; Ayers's Case, 123 U. S. 443 ; Kentucky v. Dennison, 24 How. 66.

Opinion by Mr. Justice Dean, October 2, 1893 :

On August 1, 1891, the auditor general of the commonwealth settled against the city and county of Philadelphia for the year 1890 a tax on loans, amounting to $86,513.36, no part of which was paid into the state treasury. The whole amount, however, was received by John Bardsley, city treasurer, from the city within the tax year, and was by him embezzled. About the 20th of May, 1891, on discovery of this and other large defalcations, he resigned, and soon after was sentenced to a long term of imprisonment. Being insolvent, recovery of the amount of this particular defalcation is improbable, and it may be considered lost. The material facts in this issue are so perspicuously narrated by the learned president judge who tried the case, that further repetition of them is unnecessary. The principal question before him was : In receiving this loan tax, was Bardsley an officer of the commonwealth or of the city ? If the first, the city was discharged from liability by payment to him ; if the second, nothing relieved it but payment to the state treasurer.

That the question, before the trial, was not free from doubt, the able argument of counsel for appellant abundantly shows. That the county treasurer, however, in his relations to this particular fund, was an officer of the city, the court below, in a very able opinion, has clearly demonstrated.

The many acts of assembly passed in the last fifty years, imposing taxes upon the different subdivisions of the state, and upon all classes of corporations, directing how they should be assessed and collected, and by what officers received and paid into the state treasury, had led to uncertainty as to whose agent the city treasurer was when he received this "loan tax." In receiving liquor and mercantile licenses, he was undoubtedly the agent of the commonwealth, and the city was in no way answerable for his fidelity. There was but little more doubt that in receiving the personal property tax he was the agent of the county, and its responsibility ended only with payment to the state treasurer. But, as to taxes on loans; the peculiarity, both of the subject of taxation, and the method of its collection and payment, as well as equivocal language in some of the acts of assembly, made the law susceptible to conflicting inferences as to the real functions of the officer. By a careful examination and comparison of the many acts of assembly on this subject from 1844 down to 1889, in the light of the decisions from time to time made on cases arising under them, the court below rightly determined Bardsley was the agent of the city as to this tax. The question now, on both reason and authority, may be considered settled.

It was further contended on behalf of the city, that the failure of the treasurer to pay over this tax was occasioned by the neglect of the officers of the commonwealth to enforce payment as it was their duty to do under the law, and that his retention of it after it was in his hands was by their knowledge and permission.

For the whole year during which this money was received and was due and payable to the commonwealth, and for the more than four months afterwards that Bardsley was in office, not a single quarterly return or payment, as the law enjoins, was requested or exacted by the commonwealth's officers.

The court held these facts to be immaterial, and entered judgment against the city for the amount of tax settled by the auditor general thus:

| | |
|---|---:|
| Balance at settlement, . . . . | $86,513.36 |
| Less tax on bonds exempt, . . . . | 10,003.61 |
| | $76,509.75 |
| Add interest at 12 per cent from October 1, 1891, to May 1, 1893, . . . . | 14,536.85 |
| Attorney general's commission, . . . | 3,825.49 |
| Judgment, . . . . | $94,872.09 |

Since United States v. Kirkpatrick, 9 Wheaton, 720, first followed by this court in Commonwealth v. Baldwin, 1 Watts, 54, decided as early as 1832, down to Lehigh County v. Bartholomew, 148 Pa. 82, decided in 1892, there has been no break in the decisions that the right of the commonwealth cannot be lost by the neglect or unfaithfulness of her agents. But as we have said in No. 303 September term, 1891, [the preceding case,] a suit between these same parties, this right of the commonwealth is to her tax, not to penalties. The reason given by Justice STORY in United States v. Kirkpatrick, however imperative as a declaration of public policy, never did commend itself to the moral sense; it in substance says: The sovereign must not lose in such cases, because it is intolerably inconvenient to the government to be the sufferer; it could not be carried on if it practiced the same rule it enforces on the citizen, so the right of the government shall not be impaired by the neglect or wrong of her agent. While the rule has become so fixed in the law of the commonwealth that nothing less than positive legislative action can disturb it, there is no reason why it should be extended by implication to include, besides the strict right, the tax, also a premium or penalty for a delay occasioned, certainly in part, by the neglect of her officers. This is not a suit by the commonwealth against an individual, who had the money of plaintiff in his possession, and knew the exact amount and that payment was due. It is the case of a municipality which had raised the money and put it into the hands of its own agent to be paid over, an agent, too, recognized by the commonwealth; then, by the neglect of the commonwealth's officers and the wrong of the agent combined, the money is embezzled and lost. If it were not for the prerogative of the commonwealth, of the sovereign, who is constructively

the parent of or trustee for the whole people, the argument from inconvenience, in United States v. Kirkpatrick, could be as effectively invoked by this subordinate municipality as by the commonwealth. By progress in wealth and population, the magnitude of the city's public affairs to-day equal those of the commonwealth when that case was decided. The city might aptly reply, that if it is inconvenient to the state, because of the multitude of its agents, to be prejudiced in right by their neglect, it is quite as inconvenient to the city, because of the large number of its agents, to lose money by their dishonesty. But the answer would avail nothing in the mouth of a subject against the unquestioned prerogative of a sovereign to exact the money for the use of the whole people.

When it comes, however, to adding penalties in shape of increased interest and fees for wrongful detention of the money, which the city had once raised and paid, and there was room for doubt whether in law it had not been paid to the commonwealth when Bardsley received it; and when it was just as important to the commonwealth as to the county to have the question settled as to whose agent the county treasurer is in the collection of the "tax on loans," for it affects every county in the commonwealth; and when it further appears that, owing in part to the neglect of the commonwealth's officers, the money had not reached her treasury, it seems to us there was no such detention of it as warrants the imposition of penalties.

For these reasons, the penalties imposed in the court below are deducted. Instead of interest at 12 per cent it is computed at 6 per cent to October 2, 1893, and attorney general's fees, $3,825.49, are stricken off, leaving the judgment stand as of this day $85,690.92, and as thus modified it is affirmed.