## Dunn, Receiver, Appellant, *v.* Berks County.

Argued January 25, 1940; reargued April 8, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*Charles W. Matten,* with him *Harry R. Matten,* for appellant.

*Dawson H. Muth,* for appellee.

OPINION BY MR. JUSTICE DREW, June 24, 1940:

The Receiver of The Reading National Bank and Trust Company instituted this action in assumpsit under the authority of an Act of Congress[1] to recover from the County of Berks money received by the County from the bank, after an act of insolvency, in excess of the percentage allowed to other depositors. The County filed an affidavit of defense and the case was tried before a jury, which returned a verdict for plaintiff. After argument upon the County's motions for judgment notwithstanding the verdict and for a new trial, the learned court below, without considering the motion for a new trial, entered judgment n. o. v. in favor of the County. This appeal by the Receiver followed.

The facts essential to a proper determination of this case are as follows: On February 28, 1933, The Reading National Bank and Trust Company suspended its usual and normal banking functions, limiting withdrawals upon deposit accounts to 5% or $50.00, whichever was greater. Thereafter the bank never again resumed its ordinary and regular course of business, finally closing its doors on March 2, 1933. A dividend of 25% was paid to all depositors on October 6, 1934. When the bank went on a restricted basis, Robert R. Gerhart was County Treasurer of the County of Berks, and in his official capacity had on deposit $54,969.53 in two accounts in The West Reading Title and Trust Company, to whose assets and liabilities The Reading National Bank and Trust Company had previously succeeded through certain contracts and conveyances. On and after that date, the bank accepted the eight checks here

---

[1] U. S. Code Annotated, Title 12, §91 (R. S. §5242), provides: ". . . all payments of money to either [shareholders or creditors], made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; . . ."

in question, totaling the above amount, drawn by the County Treasurer on these accounts. The Receiver contends that the County Treasurer should only have been allowed to draw out 5% of the deposits between February 28th and March 2nd, and receive 25% thereafter as a dividend. The verdict of the jury was in favor of the Receiver for $42,917.67, which sum represented the full amount of the deposits, less 5% and 25%, plus interest.

We must first consider whether there is a principle of law which would make the County liable in this suit, since it is admitted that Gerhart actually drew the checks on accounts standing in his name as County Treasurer. In this connection, as County Treasurer, he was the duly constituted fiscal officer and agent of the County.[2] In drawing checks against the deposits, he was at all times acting on the County's behalf. Such authority is necessary to the scope of his duties in the receipt, custody, and disbursement of County moneys. In the performance of his prescribed duties, Gerhart acted as the County's agent: see *Board of Supervisors of the County of Monroe v. Otis,* 62 N. Y. 88, 92; *Denton v. Merrill,* 43 Hun (N. Y.) 224, 228. In the former case, Judge ALLEN said (p. 92): "The board of supervisors and the county treasurer were alike the agents of the county as a body politic and corporate, . . ." In *Commonwealth v. Philadelphia City and*

---

[2] It is well recognized that the same person consistently may be at one and the same time both the trustee and the agent of the beneficiary: Scott, The Law of Trusts (1939), Vol. I, p. 65; Restatement of Trusts, section 8. In *Witherow v. Weaver,* 337 Pa. 488, 491, this court decided that one in Gerhart's position is trustee of the public funds in his care. The caption of the account gave the bank notice that the funds therein belonged not to Gerhart, but to the County, and that Gerhart merely held them in a fiduciary capacity. Regardless of Gerhart's personal accountability for the moneys and the fact that he might deposit them wherever he chose, nevertheless, by so earmarking them he held them in trust for the County.

*County*, 157 Pa. 558, 576, in treating of one of the normal functions of the Treasurer, Mr. Justice DEAN described him as "agent of the county."

In *Gordon, Secretary of Banking, v. Dime Bank Title & Trust Co.*, 315 Pa. 305, where the issue was whether the State of Pennsylvania could be considered a creditor, so as to obtain the priority of a sovereign over the other creditors of a closed bank with respect to a properly earmarked fund, deposited by the Register of Wills of Luzerne County in his own name, this court concluded (p. 308) : "Although Yetter, as register of wills, was the actual depositor, the fund was none the less the money of the Commonwealth, and the fact that Yetter gave bond conditioned upon payment of all tax moneys coming into his hands, does not relieve the bank of its obligation to deliver the fund to the State upon proper demand. . . ." In the present case, it is equally true that the funds in question belonged to the County, and that it, as Gerhart's principal, could duly recover them from the bank. The County, therefore, was clearly within the class of those to whom preferences are forbidden by section 91, of the Act of Congress, supra. The word "creditor", as used therein, has not the narrow meaning which appellee would have us ascribe to it. In *Hirning v. Federal Reserve Bank of Minneapolis*, 52 F. (2d) 382, 387, in holding that an agent for the receipt of money was liable to the receiver for obtaining a preference, when, with knowledge of all the facts, it turned the money over to its principal, the court assumed that the principal, as the "creditor", would be equally accountable in an action by the receiver. In the instant case, since Gerhart was acting with authority, payment on the order of the Treasurer was payment on the order of the County: see *Safe Deposit Bank of Pottsville v. County of Schuylkill*, 190 Pa. 188, 193; *Newman v. Board of Supervisors of Livingston County*, 45 N. Y. 676, 687.

On the question whether an act of insolvency was committed by the bank, it was shown that prior to the alleged payment of the checks in question, those in control of the bank had ordered it to suspend its usual and normal banking functions, by placing an express limitation upon all withdrawals. An act of insolvency was thereby committed, since, to the knowledge of those managing the bank, it was unable to meet its obligations as they accrued in the ordinary and regular course of business. In ascertaining whether the bank committed an act of insolvency, so as to render payment out of the deposits void, the depositor's knowledge or lack of knowledge of the true condition of the bank's affairs is immaterial: *Willing v. Eveloff*, 94 F. (2d) 344, 346, (certiorari denied 305 U. S. 611). And when a depositor is paid after an act of insolvency, an intent to prefer him to the detriment of other creditors is presumed: *Aufderheide v. Mine Safety Appliance Co.,* 9 F. Supp. 918, 919.

The burden of proving that preferences were obtained by means of the eight checks in question rested upon the Receiver. Five of the checks were drawn to the order of the bank, and plaintiff was unable to adduce any proof to sustain the assertion that defendant thereby received a preference. The only evidence as to them came from Gerhart, plaintiff's witness, defendant offering no testimony. He stated that he could not remember what was done with these checks, whether he received cash, deposited the proceeds, or discharged debts which the County owed the bank on account of previous payments of vouchers. As to the latter possibility, he testified that the bank had acted as the clearing house for County vouchers, paying them as they were presented by the persons to whom the County owed money; and that in such cases he would subsequently reimburse the bank by means of checks drawn on the County funds. In view of this fact, he said he could only "guess" as to the disposition of these checks drawn

to the order of the bank. On this testimony the jury was not warranted in conjecturing that the County received preferences as to such checks. If they were given in payment of debts arising from the bank's payment of vouchers prior to its insolvency, no harm was done the other depositors, since the County would have had the right to set off any debts it owed the bank against funds on deposit at the time of insolvency.

The evidence does substantiate, however, the jury's finding that as to the other three checks, Exhibits Nos. 5, 7 and 10, the County received a preference in the amount of $35,371.56, less the 5% allowed to all depositors. In regard to two of these, one for $26,000 and the other for $1,000, the testimony established that the proceeds of the former were drawn out and deposited in the County Poor District Account, the County thus receiving the money; and that Gerhart either obtained cash for the second or deposited it for collection in another bank. The third check, in the amount of $8,371.56, was drawn to the order of "Robert R. Gerhart Co. Treas.", and endorsed by him in blank. The presentation of this check in evidence was prima facie sufficient to establish that Gerhart, as County Treasurer, received the proceeds thereof, the burden of showing any other disposition resting on the County, since the check was drawn to the order of its agent.

Judgment reversed; and record remitted to the court below to enter judgment on the verdict in favor of plaintiff, reduced to the preferences given on the three checks, totaling $35,371.56.